Eddie L. **CALLAHAN** et al., Plaintiffs-Appellants,

v.

George C. **WALLACE**, as Governor of Alabama, his agents, assigns, and successors in office, et al., Defendants-Appellees.

No. 71–3309.

United States Court of Appeals, Fifth Circuit.

Sept. 11, 1972.

Rehearing Denied Oct. 31, 1972.

**60**

Joseph J. Levin, Jr., Levin & Dees, Montgomery, Ala., for plaintiffs-appellants.

William J. Baxley, Atty. Gen. of Ala., J. Victor Price, Jr., Asst. Atty. Gen., and L. H. Walden, Montgomery, Ala., for Baggett and Mills, and others.

J. Earl Smith, Dothan, Ala., for West.

Kenneth R. Cain, Ozark, Ala., for Wilkinson.

Richard H. Poellnitz, Greensboro, Ala., for Byars.

Leslie Hall, Asst. Atty. Gen., Montgomery, Ala., for the State.

Knox, Jones, Woolf & Merrill, Anniston, Ala., for Wager.

Pope & Floyd, Phenix City, Ala., for Starks and Williams.

Ralph R. Banks, Jr., Eutaw, Ala., for Tuck.

Paul J. Hooton, Roanoke, Ala., for Chase and Brazeal.

Taylor Wilkins, Jr., Bay Minette, Ala., for Thames.

T. R. Ward, Abbeville, Ala., for Nordan.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

In this appeal of a class action the only issues now asserted are monetary refunds to members of the class and attorney fees. The action was brought in July 1971 in the United States District Court for the Middle District of Alabama, under 42 U.S.C. § 1983, against all justices of the peace and all sheriffs in Alabama, the Director of the Department of Public Safety (who is in charge of Alabama state troopers), and the State Comptroller. A single hearing on temporary and permanent relief was conducted in August 1971 and the District Court's judgment entered on September 7, 1971.

The plaintiffs sought injunctive relief forbidding all justices of the peace in Alabama from trying, and all sheriffs and state troopers from bringing in justice courts, "traffic" cases, that is, cases charging violations of the state's highway laws, on the ground that under the statutory scheme of the state relating to handling of such cases in justice courts the justice had a pecuniary interest in convicting each defendant. Plaintiffs also asked a refund of all fines collected in justice courts in traffic cases after January 16, 1969, a date whose significance is explained below, and compensatory and punitive damages and attorney fees. The District Court granted full injunctive relief but declined to award damages, to order refund of the fines and to award attorney fees.

Having obtained the injunctive relief they asked, the plaintiffs appeal, raising only the issues of refusal to order the refund of fines and to grant attorney fees.

The plaintiff class is comprised of persons fined in justice courts for highway law violations after January 16, 1969. The class is estimated to number around 50,000 persons.

In Alabama at the times relevant to this suit the justice court was, as in most states, the lowest rung of the hierarchy of state courts. Its jurisdiction over highway law cases was concurrent with the circuit courts (the basic trial court of the state judicial system) and county courts created by special legislative acts in some counties. In most instances the justice court was the court in which violations of state (as opposed

to municipal) traffic offenses were charged.

In 1966 in Hulett v. Julian, 250 F. Supp. 208 (M.D.Ala.1966), a three-judge district court enjoined the single defendant justice of the peace from trying the single plaintiff on a reckless driving charge on the ground that the fees allowable by law to the justice were collectible only if he convicted the defendant. Two and a half years later in Bennett v. Cottingham, 290 F.Supp. 759 (N.D.Ala.1968), in which the defendants were the sheriff and several justices of the peace from a different county than in *Hulett*, a three-judge court enjoined the named justices from trying traffic cases and held unconstitutional as applied in traffic cases two sections of the Alabama Code[1] which fixed the fees for the justices and provided for their taxation as costs but only in the event of conviction. The Supreme Court affirmed that decision on January 13, 1969, 393 U.S. 317, 89 S.Ct. 554, 21 L. Ed.2d 513 (1969). Nevertheless, county sheriffs and state troopers subsequently making arrests for highway violations continued in many instances to file the charges in justice courts.

The plaintiffs submitted evidence that during the relevant period there were 50,630 traffic convictions in justice courts, and fines therefor in the amount of $1,230,152.80. Thus the average fine was approximately $22.00. Assuming some repeat violations, the class composed of those fined is approximately 50,000 persons.

The District Court held that it could be fairly assumed that most of the members of the class had committed the offenses with which they had been charged. It found that plaintiffs and the other members of the class, by entering pleas of guilty and paying fines, were simply disposing of their misdemeanor cases as expeditiously and as conveniently as possible. There was evidence that pleas of guilty were entered in an overwhelming majority of traffic cases brought in justice courts, probably 99%, some by the defendant in person, at times by mail, and in many cases the defendant, in a procedure familiar to motorists nationwide, simply forfeited his bond as his fine. A mayor of a small town in a predominantly rural county, who served as an ex officio justice, described the situation somewhat more colorfully than the trial court when he testified that at the request of county officials he served as justice as a matter of convenience to the public, there being no elected justice in the county, and that "ninety nine per cent of them [those charged] just wanted to pay what it was and get on down the road."

Normally the justice court is the most readily available forum. The state circuit courts are much less available—in fact, in some predominantly rural areas a circuit with one or two judges may be composed of several counties, and court may be conducted in each county only two or three times a year. County courts are of varying accessibility, but, speaking generally, are neither temporally nor geographically as available as the justice courts. The evidence was that in justice courts the court costs usually run from $8.00 to $15.00 while in circuit courts they run around $35.00 to $50.00.

The District Court found, and the record supports, that there was confusion over whether the Bennett v. Cottingham holding was applicable to all 67 counties in the state or only to the single county from which justices of the peace had been named as defendants. The trial judge took note of the fact that many of the justices were unlearned in the law and some uneducated, and that the then Attorney General of Alabama took no action, or very belated action, to inform justices generally that they should cease the trial of traffic cases.[2] Unquestionably some of the jus-

---

1. Tit. 11, §§ 96–97, Code of Ala.1940 (1958 Recompiled).

2. There was evidence that in answer to specific inquiries the Attorney General advised that Bennett v. Cottingham applied only to the county in which the defendant justices resided.

tices knew what they were doing, because some of them participated in or lobbied for changes in the statutory structure that would allow them to validly continue (on a salary basis) the trial of traffic cases. It is also clear that the state was dilatory in restructuring its court system to fill the vacuum that would have been left in highway law enforcement by application statewide of Bennett v. Cottingham. Both state troopers and county sheriffs were charged by law with enforcement of the highway laws, a duty the discharge of which was in the interest of the citizenry at large. Strictly speaking, after Bennett v. Cottingham, and until the legislature acted to restructure the court system, they should have carried out those responsibilities only in the manner and to the extent that courts other than the justice courts and having concurrent jurisdiction of highway traffic offenses were accessible and funded and manned to care for traffic cases. But under all the circumstances we are not willing to say that the experienced trial judge was required to order the refund of the fines.

In denying even nominal damages the District Court pointed out the difficulty of administering an award of a small amount to each of some 50,000 persons as compared to the small benefit to each recipient, and the fact that the plaintiffs' rights were vindicated by the action taken in the cases without award of nominal damages. The same considerations apply to attempting to refund more than 50,000 traffic fines averaging $22.00 each to persons many of whom would not be residents of the county where arrested, or even of the state. While not mentioned by the District Court, a related consideration which we perceive is whether if the fines were returned the state would attempt to reprosecute the members of the class in other courts. Exposing a tremendous number of persons to the possibility of retrial is not shown to us to be in the interest of the class—in fact, at oral argument counsel for the class conceded this was a contingency which they had not considered. We think it highly likely that many in the class would prefer to eschew the dollar benefit sought to be conferred upon them without their knowledge and let sleeping dogs lie.

■ As to attorney fees, plaintiffs' attorneys in this case were not responsible for successful establishment of the underlying legal principle which, in effect, "created the fund" of fines the refund of which plaintiffs sought. That trail was blazed by other counsel in Hulett v. Julian and Bennett v. Cottingham. Nevertheless, while recognizing the discretion of the trial judge, we think he erred in declining to award attorney fees in any amount. Plaintiffs' attorneys prepared and presented a full blown case at trial, although there was little reason for defendants to require them to do so. It is unquestionable that plaintiffs' attorneys rendered a public service by clearly establishing the applicability of Bennett v. Cottingham to every justice and every sheriff and state trooper, by laying to rest the confusion that had existed, and by bringing to an end the improper practice. In the end legislative action was taken. On October 1, 1971 the legislature adopted legislation authorizing a new inferior court for each county to take over powers, duties and functions formerly exercised by justices of the peace, with a salaried judge to be available for trial of civil and criminal cases five days a week. Tit. 13, § 506 et seq., Code of Ala.1940 (1971 Pocket Part). On August 10 and September 22, 1971, the House and Senate, respectively, proposed a constitutional amendment abolishing the office of justice of the peace, and the amendment was ratified by popular vote in January 1972. Constitution of Alabama, Amendment No. CCCXXIII.

Affirmed in part. Reversed in part. Remanded for award of attorney fees.

Costs are taxed against appellees.