This action is an outgrowth of this Court's decision inEx parte Dison, 469 So.2d 662 (Ala. 1984), in which we reversed the defendant's conviction for driving under the influence in violation of Code of 1975, § 32-5A-191, because the Uniform Traffic Ticket and Complaint ("UTTC") issued to the defendant had not been verified before a judicial officer and the defendant had raised this issue at the time of trial.[1] We concluded in Dison that this lack of verification of the ticket prevented the district court, and subsequently the circuit court on appeal, from obtaining subject matter jurisdiction, and, thus, that the defendant's *Page 586 
conviction was void. 469 So.2d at 665.
Following the Dison decision, James Clyde Brown[2] and Terry P. Duncan[3] filed this class action against the State of Alabama, the City of Montgomery, and others on behalf of themselves and all those who had been convicted of traffic offenses based upon improperly verified UTTC's. Their case was styled a "Petition for Writ of Habeas Corpus or in the Alternative Bill for Declaratory Judgment, Injunctive or Other Relief." They sought to have all improperly verified UTTC convictions expunged from the records and to have all fines and costs paid as a result of the convictions refunded to the plaintiffs.
The Circuit Court of Montgomery County certified the plaintiff and defendant classes on September 5, 1985. The trial judge's order defined the plaintiffs' class as follows:
 "All individuals who have been convicted of traffic infractions or other violations wherein the originating complaint was embodied on the Alabama Uniform Traffic Ticket and Complaint as provided by Rule 19 of the Alabama Rules of Judicial Administration which said complaints were not properly verified prior to entry of judgment at the initial trial level, exclusive of convictions rendered in the 10th Judicial Circuit.[4] Inferentially, this class is limited to those people who were convicted on improperly verified complaints subsequent to April 1, 1977, which is the effective date of the adoption of the Uniform Traffic Ticket and Complaint. From the evidence in this case the Court deems it appropriate to further delineate this class into two subclasses. The Court notes that there are certain members of the class whose convictions will show on the face of the record whether the complaints are properly verified, while others of the overall class will require proof outside the record to establish whether the complaint was properly verified. The class is therefore further defined by 'Subclass A' and 'Subclass B' as follows:
"SUBCLASS A:
 "Those members of plaintiff's class who were convicted of various offenses on the Alabama Uniform Traffic Ticket and Complaint which said complaints show on the face thereof that they were not properly verified.
"SUBCLASS B:
 "Those members of plaintiff's class who were convicted of various offenses on the Alabama Uniform Traffic Ticket and Complaint which said complaints appear to be properly verified on the face thereof but which can be shown in fact to be improperly verified."
(C.R. 212-13.)
In this same order the trial judge defined the class of defendants as follows:
 "All municipal corporations within the State of Alabama which maintain and operate municipal courts hearing traffic infractions based on the Uniform Traffic Ticket and Complaint and which have imposed fines and court costs and other penalties against the members of the Plaintiffs' class as above defined, exclusive of municipalities within the 10th Judicial Circuit."
(C.R. 214.) The trial judge ordered:
 "1. That this cause shall be maintained as a class action under Rule 23(b)(1) and (2) of the Alabama Rules of Civil Procedure on behalf of the class comprised of the named Plaintiffs and all other individuals similarly situated as defined above; and *Page 587 
 "2. That this class action shall further be maintained against the State of Alabama as an individual Defendant, and against the City of Montgomery individually and as a representative of the class of defendants of municipal corporations as above defined; and
 "3. That the judgment in this class action, whether or not favorable to aforesaid Plaintiffs' or Defendants' classes or any members thereof, shall include, and be binding on all class members as hereinbefore described.
 "4. The Court further orders that, while under the provisions of the appropriate rules notice to the class is not required, general notice would be appropriate and it is therefore further ordered that said notice in the form attached hereto as Exhibit 'A' be published for once a week for three consecutive weeks in the legal notice section of the following newspapers published and circulated within the State of Alabama:
"A. Birmingham News, Birmingham, Alabama;
"B. Huntsville Times, Huntsville, Alabama;
"C. The Anniston Star, Anniston, Alabama;
"D. The Florence Times, Florence, Alabama;
"E. Tuscaloosa News, Tuscaloosa, Alabama;
 "F. Montgomery Advertiser-Journal, Montgomery, Alabama;
"G. The Dothan Eagle, Dothan, Alabama;
"H. Mobile Press-Register, Mobile, Alabama;
"I. Montgomery Independent, Montgomery, Alabama;
 "the cost of this notice shall be borne by the Plaintiffs in this cause and should Plaintiffs prevail, may be taxed as cost at a later date.
 "5. In conjunction with this Court's decision to publish notice of this action, the Court further orders that an individual copy of Exhibit 'A' should be sent to all municipalities within the Defendants' class, by certified mail, addressed to the Clerk of such cities. In addition thereto, a copy of the notice attached hereto as Exhibit 'B' should also be sent to said municipalities. The Defendants are hereby ordered to forthwith provide to counsel for the Plaintiffs a list of all such municipalities. Upon receipt of such list Plaintiffs' counsel shall mail to the Clerk for each municipality on said list, a copy of the notices attached hereto as Exhibits 'A' and 'B'. The cost of this mailing shall also be borne by Plaintiffs and, should they ultimately prevail in this cause, may be taxed as costs against the Defendants."
(C.R. 214-16.)
Plaintiffs' counsel subsequently filed a "Notice of Compliance with Publication Order" certifying that he had fully complied with the trial court's order of September 5, 1985, at his expense. (C.R. 270.)
During the pendency of the present case and also as an outgrowth of the Dison decision, a woman who had pleaded guilty twice to driving under the influence in Dothan filed a collateral proceeding to set aside and vacate her convictions and to secure a refund of her fines. Neither of the two UTTC's she had received was sworn to or acknowledged before a judge or magistrate, and this lack of verification was plain on the face of the ticket. City of Dothan v. Holloway, 501 So.2d 1136 (Ala. 1986). In Holloway this Court overruled Dison and held that the lack of verification of the UTTC's would only affect the trial court's ability to obtain jurisdiction over the person and not its ability to obtain jurisdiction of the subject matter.
We said:
 "Therefore, the fact that the ticket in the Dison case was not verified would not affect the district court's jurisdiction of the subject matter. Instead, the lack of verification would more directly affect the question of whether the court had obtained personal jurisdiction of the defendant."
501 So.2d at 1137.
 "In overruling the Dison opinion, we are simply holding that if the UTTC is not verified and the defendant does not object *Page 588 
to this defect, before trial, then the objection to the court's personal jurisdiction of the defendant has been waived."
501 So.2d at 1139.
 "By coming to this resolution of the issue, we necessarily hold that those persons who were convicted of traffic infractions pursuant to an unverified UTTC and who did not object to that defect at the appropriate time, are not entitled to have their convictions vacated or the fines they paid refunded."
Id.
On December 30, 1985, the trial court entered a summary judgment in favor of the plaintiffs as to Subclass A only, and certified that summary judgment as final, pursuant to Rule 54(b), A.R.Civ.P. The trial court found a genuine issue of material fact as to Subclass B and denied summary judgment as to it. This Court, on the authority of Holloway, reversed the judgment of the circuit court as to Subclass A[5] and remanded the cause in State v. Brown ("Brown I"), 514 So.2d 836 (Ala. 1987),cert. denied, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425
(1988).
The defendants filed a motion on May 12, 1988, to dismiss plaintiffs' claims as to Subclass B, those whose UTTC's appeared on their face to be properly verified. The trial court dismissed all of plaintiffs' claims on the basis of the authority of Brown I, and made the order final pursuant to Rule 54(b), A.R.Civ.P. The plaintiffs appeal.[6]
We must determine whether the trial court erred in dismissing the claims against the State of Alabama made by the members of Subclass B who had been convicted of traffic offenses pursuant to UTTC's that indicated a proper verification on the face of the tickets, but which were in fact not verified. This Court's reversal of Brown I, supra, did not mandate dismissal of the complaint as to Subclass B, as it dealt only with Subclass A.
The facts in Dison, Holloway, and Brown I are distinguishable from those in this case. In each of those cases the UTTC's that were issued to the defendants were invalid on their face. Dison raised the issue of verification at the time of trial; Ms. Holloway did not raise the issue of verification and pleaded guilty as charged. We held that by submitting to the personal jurisdiction of the court and by failing to raise the issue at the time of trial, Ms. Holloway had waived the defect in the verification. Clearly, the holding in Holloway was based upon the fact that the UTTC's in question were defective on their face.
In this class action the UTTC's issued appeared on the face to be verified, but were in fact unverified due to the procedures followed by those charged with the responsibility of processing cases tried on the UTTC. The clerk of the District Court of Montgomery County testified that the officers who issued the UTTC's never appeared before her and never swore on oath to the charge, although her signature was affixed by a rubber stamp to the ticket, indicating that the officer had sworn before her to the charge, when in fact he had not. (R-41-42.) Thus, the ticket appeared to be properly verified, when in fact it was not. The clerk changed this procedure after the Dison holding.
Plaintiffs contend that the clerk of the Montgomery County District Court allowed the clerk's office personnel to "fraudulently" acknowledge UTTC's by using a rubber stamp to affix the signature of the clerk to the ticket. Plaintiffs argue that this constituted a fraud in the procurement of the judgment and violates this Court's holding in Cherry v. State,491 So.2d 1003 (Ala. 1986), cert. denied, 479 U.S. 861,107 S.Ct. 210, 93 L.Ed.2d 139 (1986). Basically, *Page 589 
plaintiffs claim that because there appeared to be a proper signature on the ticket, there was no notice of a defect. They argue that "[s]ubject matter jurisdiction was never obtained by the District Court of Montgomery County, Alabama," and that "[a] fraud apparent neither to the district court nor the members of Sub-Class B prevented each member of this sub-class from having an opportunity to consider waiving the jurisdiction defect. . . ." We cannot say that the use of a rubber stamp by clerk's office personnel to affix the signature of the court clerk to UTTC's, at the direction of and with the approval of the clerk, amounted to a fraud in the procurement of the judgment against Brown and other defendants similarly situated; however, we cannot say that the defect we are dealing with in this case — a lack of verification — was one that could be waived.
The defect in the procedure that we are dealing with in this case is not the stamping of the clerk's name by one authorized to do so. The defect is in putting a citizen to trial on a criminal charge, albeit a misdemeanor, when no one has sworn on oath, before an officer authorized to administer an oath, that the citizen has committed an offense. This is the minimum required under the criminal justice system in order to require a citizen to defend himself against a criminal charge.
In our system there are but three ways to initiate a criminal prosecution: by indictment by a grand jury, by a complaint on oath before a magistrate or other official, or on an authorized information:
 "Jurisdiction of the offense and of the person must concur to authorize a court of competent jurisdiction to proceed to final judgment in a criminal prosecution. This to the end, a formal accusation sufficient to apprise the defendant of the nature and cause of the accusation is a prerequisite to jurisdiction of the offense. Irregularities in obtaining jurisdiction of the person may be waived, but a formal accusation, by indictment, or authorized information, or complaint supported by oath, is essential to complete jurisdiction and cannot be waived."
Kyser v. State, 22 Ala. App. 431, 432, 117 So. 157, 158 (1928). See also Temporary Rule 15.1, A.R.Crim.P.
The Alabama Legislature has, through a variety of statutes, dispensed with grand juries in misdemeanor cases and has authorized prosecution of such cases by information, complaint, or UTTC before a district court. See Ala. Const. (1901), Art. VI, as amended by Amendment No. 328, 6.05 (1973). Section12-12-53, Ala. Code 1975, provides for the use of the UTTC:
 "§ 12-12-53. Requirement of use of uniform traffic ticket and complaint.
 "(a) Every law enforcement agency in the state shall use traffic citations of the form known as the uniform traffic ticket and complaint, which shall be substantially uniform throughout the state and which shall be issued in books with citations in no less than quadruplicate.
 "(b) The uniform traffic ticket and complaint shall be used in traffic cases where a complaint is made by a law enforcement officer or by any other person or an information is filed by the district attorney." (Emphasis added.)
Our Rules of Criminal Procedure define both "complaint" and "information" as being written statements made under oath. Temporary Rule 15.1(b) and (c), A.R.Crim.P. The UTTC form provides for verification of the signature of the arresting officer, because the Rules of Criminal Procedure require it. "An information is a written statement charging the defendant or defendants named therein with the commission of an indictable offense, made on oath, signed, and presented to the court by the district attorney without action by the grand jury." Temporary Rule 15.1(b), A.R.Crim.P. "A complaint is a written statement made upon oath before a judge or other official authorized by law to issue warrants of arrest, setting forth essential facts constituting an offense and alleging that the defendant committed the offense." Temporary Rule 15.1(c), A.R.Crim.P.
The Alabama Rules of Judicial Administration provide further safeguards in criminal *Page 590 
procedure. Rule 19(A)(2) provides: "The uniform traffic ticket and complaint shall be used in all traffic cases in all courts of the state. Any ticket properly issued by a law enforcement officer shall be accepted for filing and disposition in any court having jurisdiction over the alleged offense." In order to constitute a complaint upon which a prosecution can take place, a UTTC must be verified.
The members of plaintiff class were put to trial on, or pleaded guilty to, charges to which no person had sworn on oath before a judge or other official. They cannot be said to have waived the defect, because it was not apparent on the face of the UTTC that it was defective. However, their attack on the judgments is a collateral one, coming many years after the judgments were entered. They now seek to have the judgments vacated and the fines refunded. They cannot prevail on these claims. See, Cobbs v. Norville, 227 Ala. 621 at 623,151 So. 576 at 577 (1933); Carlton v. Owens, 443 So.2d 1227 at 1231 (Ala. 1983). They have not produced any evidence of fraud or corruption on the part of any state, county, or municipal officer. The practice of certifying that the officer issuing the UTTC had sworn to the charge when this was not the fact is reprehensible, but there appears to be no reason for it except ingorance of what the law requires. Those responsible for educating the people as to what is required to prosecute citizens of this State on the UTTC bear the burden for this.
A similar situation was considered in a class action brought by those persons fined by Alabama justices of the peace for traffic violations. The Callahan[7] class action was filed on the grounds that justices of the peace could not constitutionally try traffic cases under a state statutory scheme giving them a pecuniary interest in the convictions. The class of plaintiffs petitioned the United States District Court for the Middle District of Alabama:
 "Plaintiffs seek to have their convictions in Justice of the Peace Courts set aside and injunctions entered against defendant Justices from hearing any pending or future traffic cases. . . . Plaintiffs further seek restitution of all fines paid by them to Justices of the Peace for traffic violations, punitive damages from those Justices, and compensatory damages from all defendants. Finally, plaintiffs request an award against defendants for attorneys' fees."
Callahan v. Sanders, 339 F. Supp. 814, at 816-17 (M.D.Ala. 1971). While the federal district court found that the state practice constituted a denial of due process, no compensatory or punitive damages were awarded, because the action of the justices was not willful.
The federal district court also considered the question of whether the fines paid by members of the class should be refunded and the convictions set aside. The federal district judge stated as follows:
 "It has long been settled that when one pays a fine voluntarily under a mistake of law, that fine cannot be recovered unless payment was induced by the fraud or the undue advantage of the one receiving it. Deppe v. Lufkin, 116 F.2d 483 (1st Cir. 1940); Blumenthal v. United States, 4 F.2d 808
(S.D.Cal. 1925); Miami v. Keton, Fla., 115 So.2d 547 (1959). The evidence presented reflects that the named plaintiffs were guilty as charged. It must be assumed that most, if not all, of the members of the plaintiffs' class also committed the offenses for which they were charged. There is no contention to the contrary. Thus we find plaintiffs and the members of their class pleading guilty and paying fines for highway offenses when they were guilty in fact and were disposing of their misdemeanor cases as expeditiously and conveniently as possible. The fines were not paid because of fraud on the part of the defendants; at the time of their arrests, plaintiffs and their class members were not interested in the constitutionality of *Page 591 
Alabama's Justice of the Peace statutory scheme."
Callahan v. Sanders, supra, at 818-19. Thus, the court denied a refund of the fines paid, and the convictions of those in the plaintiff class were not set aside. Id. at 819. The court also denied attorney fees.
The refusal of the federal district judge to order a refund of fines and to grant attorney fees was appealed to the United States Court of Appeals for the Fifth Circuit. Callahan v.Wallace, 466 F.2d 59 (5th Cir. 1972). That court upheld the district court's refusal to refund the fines and stated:
 "The District Court held that it could be fairly assumed that most of the members of the class had committed the offenses with which they had been charged. It found that plaintiffs and other members of the class, by entering pleas of guilty and paying fines, were simply disposing of their misdemeanor cases as expeditiously and as conveniently as possible. There was evidence that pleas of guilty were entered in an overwhelming majority of traffic cases brought in justice courts, probably 99%, some by the defendant in person, at times by mail, and in many cases the defendant, in a procedure familiar to motorists nationwide, simply forfeited his bond as his fine.
". . . .
 "In denying even nominal damages the District Court pointed out the difficulty of administering an award of a small amount to each of some 50,000 persons as compared to the small benefit to each recipient, and the fact that the plaintiffs' rights were vindicated by the action taken in the cases without award of nominal damages. The same considerations apply to attempting to refund more than 50,000 traffic fines averaging $22.00 each to persons many of whom would not be residents of the county where arrested, or even of the state. While not mentioned by the District Court, a related consideration which we perceive is whether if the fines were returned the state would attempt to reprosecute the members of the class in other courts. Exposing a tremendous number of persons to the possibility of retrial is not shown to be in the interest of the class. . . . We think it highly likely that many in the class would prefer to eschew the dollar benefit sought to be conferred upon them without their knowledge and let sleeping dogs lie."
466 F.2d 59 at 61-62. The Court of Appeals affirmed the district court's holding that there could be no recovery of the fines, but reversed the district court order regarding fees and awarded attorney fees. Id. at 62.
We reach the same conclusions as did the court inCallahan. Plaintiff Brown was tried and found guilty. Plaintiff Duncan pleaded guilty and paid a fine. They sought to dispose of their misdemeanor cases as expeditiously and as conveniently as possible. There is no contention in this case that they did not commit the offenses with which they were charged.
Accordingly, we affirm the judgment of the trial court insofar as it denies the relief sought by the plaintiffs on behalf of Subclass B. They have not shown that the convictions should be vacated, nor have they shown that the fines paid should be returned. The plaintiffs have, however, made a significant contribution to the integrity of our system of jurisprudence in calling attention to a serious flaw in its administration. They have done more in that regard to advance the cause of justice than vacating the judgments of the class members would achieve. We are informed by counsel on both sides of this case that because of this and similar litigation, the practice has been discontinued and that now the officers issuing the UTTC's appear before a judge or magistrate and swear on oath to the charges made therein. We hold that the judgments are not due to be vacated; we also hold that under well settled principles of law, the fines cannot be recovered. However, the plaintiffs are entitled to attorney fees.
The fact that this litigation, by virtue of our rationale and holding, has not produced a monetary recovery does not preclude an *Page 592 
award of attorney fees. Mills v. Electric Auto-Lite Co.,396 U.S. 375, 391-93, 90 S.Ct. 616, 625-26, 24 L.Ed.2d 593 (1970), states the rule as follows:
 "While the general American rule is that attorney's fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself.
". . . .
 "The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses. 'The foundation for the historic practice of granting reimbursement for the cost of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 166, 83 L.Ed. 1184, 1187, 59 S.Ct. 777 [780] (1939).' . . ."
This litigation clearly resulted in a benefit to the general public. It is unquestionable that plaintiffs' attorneys rendered a public service by bringing an end to an improper practice. The public nature of the services rendered by these lawyers justifies an award of attorney fees. See Callahan v.Wallace, supra, at 62.
We remand this cause to the trial court for proceedings to determine the amount of an attorney fee to be awarded in this case from the State of Alabama, according to these guidelines (which are listed in no particular order):
(1) The measure of success achieved.
 (2) The nature and value of the subject-matter of the attorney's employment, including the novelty and difficulty of the questions presented.
 (3) The learning, skill, and labor requisite to perform the legal service properly.
 (4) The time consumed and reasonable expenses incurred by the attorney.
 (5) The professional experience, reputation and ability of the attorney.
(6) The weight of his responsibility.
 (7) The fee arrangement between attorney and client, including whether a fee was fixed or contingent.
 (8) The fee customarily charged in the locality for similar legal services and awards in similar cases.
 (9) The time limitations imposed by the client or by the circumstances.
 (10) The likelihood that the attorney's employment in this case precluded other employment.
 (11) The nature and length of the professional relationship with the client.
(12) The undesirability of the case.
 (13) Any non-monetary benefits conferred upon the class in this class action.
See: Reynolds v. First Alabama Bank of Montgomery, N.A.,471 So.2d 1238 (Ala. 1985), Peebles v. Miley, 439 So.2d 137 (Ala. 1983), Mashburn v. National Healthcare, Inc., 684 F. Supp. 679
(M.D.Ala. 1988), and Johnson v. Georgia Highway Express, Inc.,488 F.2d 714 (5th Cir. 1974).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and HOUSTON and KENNEDY, JJ., concur.
JONES, ALMON and ADAMS, JJ., concur in part and dissent in part, with opinion by ADAMS, J.
STEAGALL, J., concurs in part and dissents in part, with opinion.
MADDOX, J., dissents. *Page 593 
[1] Dison was arrested by an Alabama state trooper for D.U.I. The arresting officer signed the UTTC, but it was not sworn to and acknowledged by a judge or magistrate prior to or during the district court proceedings. Dison was tried in district court, was found guilty, and was fined $200. He appealed to circuit court, where the district attorney filed a separate complaint. Dison moved to dismiss the complaint on the ground that the district court judgment was void, being based upon an unverified UTTC. The circuit judged denied the motion. Dison was found guilty and was fined $200. Id. at 663.
[2] James Clyde Brown was arrested for driving under the influence of alcohol. He was issued a UTTC. Court personnel stamped the clerk's name on the UTTC without proper verification from the issuing officer. Brown appeared in the District Court of Montgomery County and was convicted. He appealed his conviction to the Circuit Court of Montgomery County and was convicted there in a trial de novo.
[3] Duncan was arrested for driving under the influence. He pleaded guilty and paid a fine.
[4] The City of Birmingham intervened in this suit. The trial judge learned during the hearing that an identical suit was pending in Jefferson County (the Tenth Judicial Circuit), and he excluded that circuit when he certified the class.
[5] Subclass A contained those persons whose tickets showed on the face that they were not verified. Generally, Subclass A consisted of those whose tickets did not contain a signature of acknowledgement, such as in Holloway.
[6] The plaintiffs' brief states as follows: "This appeal addresses a significantly smaller subclass of defendants convicted in Montgomery County District Court only — defendants who were victims of a fraud upon the Montgomery County District Court which could not have been waived because it was concealed by a fraudulent act which purported to confer jurisdiction upon the court." (Plaintiffs' brief, page 10. See also Plaintiffs' brief, page 3.)
[7] Callahan v. Sanders, 339 F. Supp. 814 (M.D.Ala. 1971), andCallahan v. Wallace, 466 F.2d 59 (5th Cir. 1972).