Gary Michael Smith, the appellant, was convicted of driving under the influence of alcohol, in violation of Ala. Code 1975, § 32-5A-191(a)(2), as adopted by the municipal code of Tuscaloosa. He was fined $2,500, and all but 48 hours of his sentence to six months' in jail was suspended. He raises two issues on this appeal from that conviction.
 I.
The appellant contends that his motion to dismiss should have been granted because the Uniform Traffic Ticket and Complaint (UTTC) was not properly verified.
It is undisputed that the UTTC was issued on May 27, 1989, and that it was verified on October 26, 1989 (CR. 1), the same date the appellant pleaded not guilty and was tried and convicted in municipal court. CR. 5.
It appears that in municipal court, defense counsel did object to the unverified UTTC but only after the prosecution's first witness had taken the witness stand. In circuit court, on appeal of the municipal conviction for trial de novo, the appellant filed a written motion to dismiss. In its brief in opposition to the appellant's motion to dismiss, the City admits that the UTTC was not verified until the day of trial and conviction in the municipal court.
 "On a date well before trial in municipal court, Jim Hall, Attorney for the Defendant, and Assistant City Attorney Tim Nunnally discussed the U.T.C. as written, and Mr. Hall consented to amending the U.T.C. to add subsection '(a)(2)' to the state code citation. . . . *Page 1137 
"Thereafter, a trial in City Court was commenced on October 26, 1989, before the Honorable Glenn Baxter, Municipal Judge. Officer Fulgham was the City's first witness. After Officer Fulgham was sworn, took the witness stand, and answered the City's first question inquiring the witness' name, Defendant's Attorney, Tommy Kirk, raised an objection based on the failure of [the] U.T.C. to be verified by a judge or magistrate. At this time, Officer Fulgham swore before Judge Baxter that the facts in the Complaint were true. This was the first time an objection to the lack of verification had been raised." CR. 22.
"In order to constitute a complaint upon which a prosecution can take place, a UTTC must be verified." Brown v. State,565 So.2d 585, 590 (Ala. 1990). However, Brown involved a verification that appeared proper on the face of the UTTC, when, in fact, there had been no verification. A thorough reading of Brown makes it evident and clear that that case involves only verifications that appear proper on the face of the record. Brown did not overrule City of Dothan v. Holloway,501 So.2d 1136 (Ala. 1986), but found Holloway and other cases distinguishable on the ground that, "[i]n each of those cases[,] the UTTC's that were issued to the defendants were invalid on their face." Brown, 565 So.2d at 588. Furthermore, in Brown, the Supreme Court commented upon its holding inHolloway:
 "In Holloway this Court overruled [Ex parte] Dison [469 So.2d 662 (Ala. 1984)] and held that the lack of verification of the UTTC's would only affect the trial court's ability to obtain jurisdiction over the person and not its ability to obtain jurisdiction of the subject matter. We said:
 " 'Therefore, the fact that the ticket in the Dison case was not verified would not affect the district court's jurisdiction of the subject matter. Instead, the lack of verification would more directly affect the question of whether the court had obtained personal jurisdiction of the defendant.'
"501 So.2d at 1137.
 " 'In overruling the Dison opinion, we are simply holding that if the UTTC is not verified and the defendant does not object to this defect, before trial, then the objection to the court's personal jurisdiction of the defendant has been waived.'
"501 So.2d at 1139.
 " 'By coming to this resolution of the issue, we necessarily hold that those persons who were convicted of traffic infractions pursuant to an unverified UTTC and who did not object to that defect at the appropriate time, are not entitled to have their convictions vacated or the fines they paid refunded.'
"Id.
". . . .
 ". . . Ms. Holloway did not raise the issue of verification and pleaded guilty as charged. We held that by submitting to the personal jurisdiction of the court and by failing to raise the issue at the time of trial, Ms. Holloway had waived the defect in the verification. Clearly, the holding in Holloway was based upon the fact that the UTTC's in question were defective on their face."
Brown, 565 So.2d at 587-88.
Here, although the lack of verification was plain on the face of the UTTC, objection was not raised until after the first witness for the prosecution had taken the witness stand to testify in the appellant's trial in municipal court. UnderHolloway and Brown, the appellant's objection to the lack of the verification of the UTTC was one of personal and not subject matter jurisdiction. Under Rule 15.2, A.R.Crim.P., such an objection could be raised "only by pre-trial motion as provided in Rule 15.3." Under Rule 15.3, as applied to municipal courts, a pre-trial motion "must be made . . . at the time of or before entering a plea." Rule 15.3(a)(2). Consequently, the appellant's motion to dismiss was untimely. Furthermore, when the appellant did object, the municipal judge immediately cured the defect by having the issuing officer *Page 1138 
swear to the UTTC.[1]
 II.
The appellant argues that "the court erred in permitting Kenneth Warner to testify as an expert on 'retrograde extrapolation' . . . [and] in holding that Dr. Warner's study, practice, experience or observation could arise from one article which he had read in the New England Journal of Medicine." Appellant's brief at 10.
The controlling facts of this case are not complicated. The prosecution proved that a little before 6:00 on the evening of May 27, 1989, the appellant drove his automobile into the rear of a pickup truck that was stopped on a public road at a red light in Tuscaloosa, Alabama. The appellant was arrested at the scene and charged with driving under the influence of alcohol. He was taken to the police station, where he refused a breath test to determine his blood-alcohol content. The appellant remained in jail.[2] The next morning, at approximately 9:18, the appellant submitted to a breath test before being released from jail. That test revealed a blood-alcohol level of .034% at that time.
At trial, Kenneth E. Warner, Jr. testified that he was a medical physician and was employed as a medical examiner for the State of Alabama. He was permitted to testify, over objection, that the appellant's blood-alcohol level at the time of the accident was approximately .259%. This opinion was based on the theory of "retrograde extrapolation."
Dr. Warner testified that "[r]etrograde extrapolation is the determination of a given blood alcohol level at one time from a known measured alcohol at another time." R. 120-21. He testified that the rate of metabolism in the human body of alcohol established by his "studies and the scientific literature studied" was .015% per hour. R. 123. That figure was "scientifically accepted as being a valid and reliable figure." R. 123.
He had used retrograde extrapolation as a part of his "daily activities" in performing autopsy examinations. R. 121. He testified that he had performed one experiment or study with one individual involving retrograde extrapolation. He stated that he had never written an article about this subject and was not accepted by an scientific community or agency as an expert in retrograde extrapolation. Contrary to the appellant's implication, Dr. Warner did not testify that he had read only one article about retrograde extrapolation. He did testify: "Well, I don't think I need to give an entire list of all the books, but specifically, the most recently accepted bit of scientific literature was in the most accepted of all the medical journals, which is called the New England Journal of Medicine, which was published in August of [1991]." R. 133.
Dr. Warner testified that he considered Dr. George Pearl competent in this area and that he had "worked with him and discussed blood alcohol and blood alcohol breakdown with him personally," including extrapolation and "everything about alcohol." R. 134. He testified that in 1988 or 1989 he had testified as a defense witness on retrograde extrapolation. R. 142.
At trial, defense counsel objected to evidence of the breath test on the following grounds: that the test was "totally irrelevant as to whether or not [the appellant] was intoxicated at the time of the impact" (R. 106); that it "is totally too removed in *Page 1139 
time from the time of this impact" (R. 107); that "there is no proof that the first test was 20 minutes after the accident" (R. 109); and that the appellant was not observed during the 15-hour period (R. 109-10). Defense counsel objected to the admission of Dr. Warner's testimony on the following grounds: that his testimony was irrelevant because the test was "far away in time" (R. 110); that he did not observe the appellant during the intervening hours (R. 110); that the "starting figure" of 0.034% could not be presumed to be correct (R. 130); that there was no foundation for "using the scientifically accepted figure .015 percent per hour metabolism of alcohol" (R. 138-39) because "[t]hat has not been laid as a foundation in this case," and "this gentleman hasn't been able to testify to anybody except himself" (R. 139); and because "a predicate has not been laid for this gentleman to get into that area." (R. 140). Although defense counsel vigorously attacked Dr. Warner's qualifications as an "expert," he did not challenge the admissibility of the scientific method of retrograde extrapolation itself.
After considering the specific objections raised at trial, we conclude that the trial court did not abuse his discretion in permitting Dr. Warner to testify as an expert witness on retrograde extrapolation and the metabolism of alcohol in the human body. " 'The trial court must be apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the particular legal issue involved.' " Ex parte Weaver, 530 So.2d 258, 259 (Ala. 1988) (quoting Bland v. State, 395 So.2d 164, 168 (Ala.Cr.App. 1981)). "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith,526 So.2d 880, 882 (Ala. 1987).
 "The admissibility of expert opinions is authorized in Alabama by a statute which reads: 'The opinions of experts on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses.' To qualify as an expert, the witness must have such knowledge, skill, experience or training as that his opinion will be considered in reason as giving the trier of fact light upon the question to be determined. The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse."
C. Gamble, McElroy's Alabama Evidence § 127.01(5)(b) (4th ed. 1991) (footnotes omitted). Due to Dr. Warner's apparent knowledge, training, and practical experience in alcohol absorption, "his knowledge exceeds that of the average juror or witness, and he was therefore competent to testify as an expert." Ellingwood v. Stevens, 564 So.2d 932, 936 (Ala. 1990). Any objection the appellant has that is based on Dr. Warner's "alleged lack of knowledge goes to the weight rather than to the admissibility of his testimony." Ellingwood,564 So.2d at 936.
" 'Retrograde extrapolation is the process whereby the result of a blood alcohol test taken sometime after an incident is used to determine the blood alcohol concentration at the time of the incident.' " E. Abbott, "One for the Road" — TheReliability of Retrograde Extrapolation and the Implicationsfor Vermont Statutes, 16 Vt.L.Rev. 395, 397 (1991) (footnote omitted). The rule followed in a majority of the states is that the prosecution is not required to present expert testimony relating the blood alcohol test result back to the time the defendant was driving where the test was given within a reasonable time after the defendant was stopped. See Terry v.City of Montgomery, 549 So.2d 566, 567 (Ala.Cr.App. 1989), where this Court found "no merit" to the argument that where the breath test was given approximately one and one-half hours after the time of the offense, the City should have been required to relate the test results to the time of the offense. "Ordinarily, a test done within two hours of an arrest is considered timely." 2 R. Erwin, Defense of Drunk Driving Cases,Criminal and Civil § 15.09 at 15-68 (3d ed. 1991). *Page 1140 
However, the minority rule, followed in four states, requires the prosecution to extrapolate or to relate the test results back to the time the defendant was driving. See Haas v. State,567 So.2d 966, 970 (Fla.App. 1990) (authority cited therein for Arizona, Vermont, and South Dakota); State v. Geisler,22 Conn. App. 142, 576 A.2d 1288, 1293-96 (Connecticut), cert. denied,215 Conn. 819, 576 A.2d 547 (1990), vacated on other grounds, ___ U.S. ___, 111 S.Ct. 663, 112 L.Ed.2d 657 (1991).
In State v. Tischio, 107 N.J. 504, 527 A.2d 388 (1987), the Supreme Court of New Jersey held that a prosecution for a violation of the statute prohibiting the operation of a motor vehicle by a person with a blood alcohol concentration of 0.10% or more by weight of alcohol in his blood "neither requires nor allows extrapolation evidence to demonstrate the defendant's blood-alcohol level while actually driving." Tischio,527 A.2d at 397. However, in State v. Oriole, 243 N.J. Super. 688,581 A.2d 142 (1990), the defendant was charged with aggravated assault in the operation of a motor vehicle. The Court held the holding in Tischio related strictly to the "per se" intoxication rule (driving with a blood-alcohol level of 0.10% or more) and that extrapolation evidence was not ruled out in every circumstance.
 "His state of intoxication is probative on the issue of recklessness at that time [of the operation of the vehicle and the impact], rather than when the test was administered. Consequently, extrapolation evidence is necessary to give the jury this necessary and probative evidence. The extrapolation evidence will give the jury the most accurate information of the state of intoxication at the crucial time period, and thus, shed light on the existence and extent of any reckless conduct."
Oriole, 581 A.2d at 145 (footnote omitted).
Based on the particular objections entered in this case, the issue of whether any expert should be allowed to testify to a defendant's blood-alcohol content based upon the application of the process of retrograde extrapolation has not been presented or preserved for review. This opinion should not be interpreted as any tacit approval of the use of retrograde extrapolation in determining blood-alcohol content in prosecutions for driving while intoxicated.
 "Retrograde extrapolation and BAC [blood-alcohol content] are used as evidence of the defendant's condition during DUI prosecutions. This type of evidence has prompted heated controversy and given rise to numerous studies. Careful analysis of these studies indicates that retrograde extrapolation is an unreliable method of determining a defendant's condition at the time of operation. The inadequacies of retrograde extrapolation extend beyond mere technical inaccuracies to problems which are inherent in the basic premises and calculations of this technique. These inadequacies render retrograde extrapolation inherently untrustworthy and therefore inappropriate for use as evidence to convict drunk drivers."
16 Vt.L.Rev. at 397 (footnotes omitted). See also "Proof and Disproof of Alcohol-Induced Driving Impairment Through Breath Alcohol Testing," 4 P.O.F.3d 229, 290 (1989) ("Taken together, these findings effectively destroy the usefulness of a single BAC measurement as a precise indicator of a prior BAC. In most every fact situation with one measurement, it becomes impossible to prove beyond a reasonable doubt that the trend of the blood alcohol level was decreasing between the traffic incident and the test, since it can possibly increase for as long as eight hours after completing consumption.").
Based upon the objections raised at trial and Dr. Warner's experience, training, and study, we conclude that, under the particular and limited circumstances of this case, the trial court did not err in permitting Dr. Warner to testify as an expert witness with regard to the appellant's blood-alcohol content.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] In Lawrence v. State, 601 So.2d 194, 195-196 (Ala. 1992), this Court held:
 "We hold that the 48 hour requirement of Rule 19(A)(5)(a) [A.R.Jud.Admin.] is a ministerial or administrative act designed to ensure the accountability of each UTTC issued to a law enforcement agency. Cf. Donovan v. State, 359 So.2d 1181, 1183-84 (Ala.Cr.App. 1978) (the failure to timely return a properly executed search warrant does not invalidate the search and seizure). Therefore, in the absence of some showing of prejudice, a defendant has no ground of complaint because the UTTC was untimely verified under Rule 19."
[2] Ala. Code 1975, § 32-5A-191(g) provides:
 "A person who has been arrested for violating the provisions of this section [DUI] shall not be released from jail under bond or otherwise, until there is less than . . . [0.1] percent by weight of alcohol in his blood. . . ." *Page 1141