In Alabama, a party may recover attorney fees only when an award is authorized by statute, is provided for by contract, or is justified by a "special equity." Horn v. City of Birmingham, 718 So.2d 691, 692
(Ala.Civ.App. 1997), rev'd, Ex parte Horn, 718 So.2d 694 (Ala. 1998); see also Blankenship v. City of Hoover, 590 So.2d 245 (Ala. 1991). A court may award an attorney fee on the basis that it is justified by a special equity "where the plaintiff's efforts are successful in creating a fund out of which the fees may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interest of the plaintiff." Ex parteHorn, 718 So.2d 694, 702 (Ala. 1998). These circumstances have been termed the "common-fund" and "common-benefit" exceptions. Id.
This Court discussed the common-fund and common-benefit exceptions inBrown v. State, 565 So.2d 585, 592 (Ala. 1990), where a class of plaintiffs, each of whom had been convicted of a traffic offense based upon an improperly verified Uniform Traffic Ticket and Complaint ("UTTC"),[6] sued the State of Alabama, the City of Montgomery, and others, seeking to have all convictions based upon improperly verified UTTCs expunged from their records and to have all fines and costs paid as a result of the convictions refunded. 565 So.2d at 586. Although this Court affirmed the judgment of the trial court, which denied the relief sought by the plaintiffs, this Court nevertheless held that the plaintiffs were entitled to an award of attorney fees:
 "The plaintiffs have, however, made a significant contribution to the integrity of our system of jurisprudence in calling attention to a serious flaw in its administration. They have done more in that regard to advance the cause of justice than vacating the judgments of the class members would achieve. We are informed by counsel on both sides of this case that because of this and similar litigation, the practice has been discontinued and . . . now the officers issuing the UTTC's appear before a judge or magistrate and swear on oath to the charges made therein. . . .
". . . .
 "This litigation clearly resulted in a benefit to the general public. It is unquestionable that plaintiffs' attorneys rendered a public service by bringing an end to an improper practice. The public nature of the services rendered by these lawyers justifies an award of attorney fees."
565 So.2d at 591-92 (citation omitted).
Similarly, in Bell v. Birmingham News Co., 576 So.2d 669 (Ala.Civ.App. 1991), the Birmingham News Company sought to enjoin the Birmingham City Council from conducting closed sessions to elect the council's president and president pro tempore. The circuit court issued the injunction and awarded attorney fees, reasoning that the citizens of Birmingham "derive a common benefit `by an action which enforces *Page 687 
the requirements of the statute that the business of the City Council be conducted in open and public meetings and, specifically, that the election of Council officers be conducted openly and not in secret.'" 576 So.2d at 670. The Court of Civil Appeals, relying on our decision in Brown, supra, determined that the record contained ample evidence supporting the circuit court's conclusion that the plaintiffs' actions "resulted in a benefit to the general public." Id. Therefore, it held, the circuit court's award of fees pursuant to the common-benefit exception was proper.
In this case, the plaintiffs' efforts to prevent the construction of a waste facility in their neighborhood did not produce "a benefit to the general public" like that produced in Brown and Bell. The plaintiffs inBrown and Bell conferred benefits that were state-wide and city-wide, respectively; the plaintiffs' efforts here to have the waste station located in another area have not conferred a similar benefit. Instead, it appears that the plaintiffs' efforts benefited only those in the plaintiffs' immediate neighborhood, to the apparent detriment of those who would use the facility and those who are close to its ultimate location.
This is the third time these parties have come before this Court. In Exparte Horn, 718 So.2d 694 (Ala. 1998), a majority of this Court determined that the common-benefit exception to the American rule applied in this case and that the plaintiffs were therefore entitled to an award of attorney fees paid by the City of Birmingham. I dissented, because I readBrown and Bell to require a benefit to society broader than that provided to a particular neighborhood or group.
The parties came before this Court again in Ex parte City ofBirmingham, 757 So.2d 389 (Ala. 1999). Following this Court's decision inEx parte Horn, the trial court had ordered the City to pay an interim attorney-fee award of $250,000, and the City sought mandamus relief in the form of a writ from this Court directing the trial court to vacate its order awarding an interim attorney fee. The City asked this Court to revisit its decision in Ex parte Horn holding the common-benefit exception applicable. This Court denied the City's petition for mandamus relief, and, in doing so, declined to reconsider its holding that the common-benefit exception applied, noting that its prior decision in Exparte Horn established the law of the case. "Under the `law of the case' doctrine, the `findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.'" Heathcoat v. Potts,905 F.2d 367, 370 (11th Cir. 1990) (quoting Westbrook v. Zant,743 F.2d 764, 768 (11th Cir. 1984)). Thus, the Court's conclusion that the common-benefit exception applies in this case was binding in the mandamus proceeding.
I dissented in Ex parte Horn because I did not believe our prior decisions supported the conclusion that the common-benefit exception applies in this case. While I adhere to that view, the majority's decision in Ex parte Horn established the law of the case. For that reason alone, I concurred in City of Birmingham, and for that reason alone I concur today.
[6] This Court wrote in Brown:
 "The defect in the procedure that we are dealing with in this case is not the stamping of the clerk's name by one authorized to do so. The defect is in putting a citizen to trial on a criminal charge, albeit a misdemeanor, when no one has sworn on oath . . . that the citizen has committed an offense."
565 So.2d at 589.