[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1182 
The Alabama Department of Environmental Management ("ADEM") appeals from a judgment entered by the Montgomery Circuit Court awarding the Town of Lowndesboro and Lee Frazer approximately $338,618 as interim attorney fees.
In August 1998, Alabama Disposal Solutions-Landfill, L.L.C. ("ADSL"), and the Lowndes County Commission entered into an agreement for ADSL to operate a solid-waste landfill in Lowndes County. The proposed location of the landfill was within the police jurisdiction, but not the corporate city limits, of Lowndesboro. In January 1999, ADSL filed an application with ADEM for a solid-waste-landfill permit. The application requested that ADEM issue a permit allowing ADSL to operate a solid-waste landfill to be located on a proposed *Page 1183 
site consisting of approximately 647.15 acres.
Pursuant to Ala. Admin. Code (ADEM), Rule 335-13-5-.02(1)(f), an applicant for a solid-waste-landfill permit is required to provide ADEM with the name and mailing address of "all property owners whose property is adjacent to the proposed site." Frazer owns property that is physically adjacent to the proposed site but that is not physically adjacent to the disposal area contained within the proposed site. Although ADSL provided ADEM with a list of the names and addresses of several other property owners who owned property adjacent to the proposed site, it did not provide ADEM with Frazer's name or address. Because ADSL did not inform ADEM about Frazer, ADEM failed to mail Frazer a copy of the public notice of ADSL's landfill-permit application as required by ADEM's regulations.
After receiving comments on ADSL's application, ADEM concluded that no public hearing was necessary as to ADSL's permit application and that the permit application was due to be approved. On July 19, 2000, ADEM issued a solid-waste-landfill permit to ADSL. After ADEM issued ADSL's permit, Lowndesboro and Frazer appealed the issuance of the permit to the Environmental Management Commission ("EMC"). See Ala. Admin. Code (ADEM), Rule 335-13-1-.07 and Rule 335-2-1-.03. Among the issues Lowndesboro and Frazer raised in the administrative appeal were the lack of notice to Frazer and an allegation that ADEM's approval of the landfill permit violated a Lowndesboro city ordinance.[1]
In August 2000, while the administrative appeal was pending, Lowndesboro and Frazer filed a complaint, pursuant to Ala. Code 1975, § 6-6-220 et seq., in the Montgomery Circuit Court against ADEM, alleging that ADSL had not obtained "host government" approval from Lowndesboro before filing its permit application with ADEM and that Frazer had "never received any type of notice regarding the Landfill . . . and her name was not submitted to ADEM by [ADSL]." Lowndesboro and Frazer alleged that ADEM's consideration and issuance of ADSL's permit was in violation of state law, and they requested that the trial court enter a declaratory judgment establishing the "rights, duties, and liabilities of the parties" and that it "[e]nter such orders . . . as may be necessary and proper to give effect to the rights, duties, and liabilities of the parties as . . . declared by the Court." Lowndesboro and Frazer subsequently amended their complaint four times. Frazer and Lowndesboro's complaint, as amended, asserted 20 claims for declaratory relief, including a claim requesting that the trial court stay any further action on ADSL's permit or any other landfill permit until ADEM adopted a State Solid Waste Management Plan ("State Plan") as a final regulation pursuant to state law. See Ala. Code 1975, § 22-27-45.
In October 2000, Lowndesboro and Frazer filed a motion with the trial court requesting that it stay the EMC from conducting any further proceedings in the administrative *Page 1184 
appeal regarding ADSL's permit based on ADEM's lack of notice to Frazer and based on ADEM's failure to adopt a State Plan as a final regulation pursuant to Ala. Code 1975, §22-27-45(4)(d).[2] In November 2000, at the hearing on the motion for a stay, ADSL filed a motion to intervene in the case for the purpose of joining ADEM in its defense against Lowndesboro and Frazer's claims. ADSL also filed an answer denying that Lowndesboro and Frazer were entitled to the relief requested in their complaint and a response to Frazer and Lowndesboro's motion for a stay.
In November 2000, the trial court entered an order staying further proceedings by the EMC in the administrative appeal regarding ADSL's permit pending ADEM's adoption of a State Plan. ADEM and ADSL filed an interlocutory appeal from the order issuing the stay. See Alabama Disposal Solutions-Landfill,L.L.C. v. Town of Lowndesboro, 837 So.2d 292, 296
(Ala.Civ.App. 2002). However, thereafter, ADEM adopted a State Plan as a final regulation and the trial court, upon a "Motion to Lift Stay" filed by Lowndesboro and Frazer, lifted the stay of EMC's administrative proceedings. The trial court's lifting of the stay eliminated the sole basis for this court's jurisdiction over ADEM's and ADSL's appeals from the order of the Montgomery Circuit Court granting the stay.[3] We dismissed the appeal from the Montgomery Circuit Court for lack of jurisdiction. Alabama Disposal Solutions,837 So.2d at 296.
In August 2001, while ADEM's and ADSL's appeals in AlabamaDisposal Solutions were pending, Lowndesboro and Frazer filed a motion for a summary judgment in the Montgomery Circuit Court action based on (1) the alleged "failure of [ADEM] to provide notice to `adjacent landowners' to a proposed landfill unit as required by ADEM Admin Reg. § 335-13-5-.03" and (2) an alleged error in the public notice. Lowndesboro and Frazer requested that the trial court declare that ADEM's failure to provide Frazer with notice violated Ala. Admin. Code (ADEM), Rule 335-13-5-.03; that the failure to provide Frazer with notice "precluded the authority of ADEM to issue a permit to ADSL" for the landfill at issue; that ADEM's public notice was defective and that the defective notice "precluded the authority of ADEM to issue a permit to ADSL" for that landfill; and that ADSL's permit for that landfill was "void ab initio."
In March 2002, the trial court entered an order that granted Lowndesboro and Frazer's motion for a summary judgment and that declared ADSL's permit to be "null and void." ADEM and ADSL appealed from the judgment. We affirmed the trial court's judgment without issuing an opinion. See Alabama Dep't ofEnvtl. Mgmt. v. Town of Lowndesboro, (No. 2010824, June 30, 2004) 915 So.2d 1182 (Ala.Civ.App. 2004) (table).
In February 2002, before the Montgomery Circuit Court entered the summary judgment for Lowndesboro and Frazer, Lowndesboro and Frazer filed a motion for attorney fees against ADEM, alleging that, *Page 1185 
as a result of their efforts, ADEM had adopted a State Plan as a final regulation and that Frazer and Lowndesboro "ha[d] performed a public service which has benefitted the citizens of Lowndes County as well as the State of Alabama." The motion requested that the trial court apply a lodestar and multiplier to the attorney-fee award that would result in an attorney-fee award of approximately $1.6 million. Lowndesboro and Frazer also filed a motion requesting that the trial court reserve jurisdiction over their motion for attorney fees in the event the trial court entered a summary judgment in their favor.
In its March 2002 summary-judgment order, the trial court "reserve[d] jurisdiction over other pending motions" and set the pending motions for a hearing to be held on April 3, 2002. Subsequently, the trial court held a hearing on Lowndesboro and Frazer's motion for attorney fees, at which it received ore tenus evidence. No transcript was made of the hearing. Subsequently, Lowndesboro and Frazer, on the one hand, and ADEM, on the other, filed briefs in support of their respective positions for and against an award of attorney fees to Lowndesboro and Frazer.
The trial court scheduled a status conference in August 2002. At the status conference, the trial court indicated that it would not rule on Lowndesboro and Frazer's motion for attorney fees until this court rendered a decision as to ADEM and ADSL's appeal of the summary judgment because "one of the matters to be considered in awarding attorney fees is the measure of success which could not be determined until there is a final ruling."
Approximately one week later, Lowndesboro and Frazer filed a motion requesting that the trial court award them interim attorney fees based on essentially the same grounds that they had asserted in their February 2002 motion for attorney fees, except that they did not request the application of a lodestar or multiplier to the requested fee award. ADEM filed a response opposing the motion for interim attorney fees.
On December 4, 2002, the trial court entered an order awarding Lowndesboro and Frazer approximately $338,618 as interim attorney fees. The order stated, in part:
 "BACKGROUND "On November 29, 2000, this Court ordered `That all proceedings concerning the issuance of a Solid Waste Permit to [ADSL] for the operation of the Talla-wassee Ridge Solid Waste Facility, shall be stayed pending the adoption of a State Solid Waste Management Plan by [ADEM].' The basis of the ruling was that § 22-27-45(4)(d), Code of Alabama 1975, required ADEM to adopt a State Solid Waste Management Plan ('State Plan') as a final regulation and that § 22-27-40, et seq. required that permits for solid waste facilities had to comply with the State Plan. Since it was undisputed that ADEM had not adopted the State Plan as a final regulation, this Court stayed the proceedings until ADEM complied with the mandate of the legislature and adopted the State Plan as a final regulation.
 "On October 10, 2001, Plaintiffs filed a Motion to Lift Stay because the [EMC], at the request of ADEM, had adopted a State Plan as an emergency rule on October 9, 2001. Attached to the Motion to Lift Stay was the resolution of the [EMC]. The resolution included the following recital:
 "WHEREAS, the Department has not issued any solid waste permits since it received notification of an Order of the Montgomery County Circuit *Page 1186 
Court, dated November 29, 2000, in which the Department was essentially put on notice that its solid waste permitting program was in jeopardy until a State Solid Waste Management Plan is adopted as a regulation. The Department appealed the Order to the Court of Civil Appeals, yet no ruling has been issued by that Court to date. The Department also filed a Motion to Clarify with Circuit Court that was later denied. The Legislature considered legislation that would remedy the Department's situation. The legislation did not pass in the regular session of the Legislature or in any of the special sessions.'
 "Following the hearing, the stay was lifted on October, 24, 2001. Subsequently, on February 5, 2002, the State Plan was adopted as a final regulation.
 "INTERIM ATTORNEY FEES "In their request for interim fees, Plaintiffs' attorneys are requesting fees for time expended until the [State Plan] was adopted as a final regulation on February 5, 2002. Based on the cases cited by Plaintiffs, Ex parte City of Birmingham, 757 So.2d 389 (Ala. 1999), James v. Alabama Coalition for Equity, Inc., 713 So.2d 937 (Ala. 1997) and Hanrahan v. Hampton, 446 U.S. 754, 757
(1980), this Court is of the opinion that an award of interim attorneys fees is warranted. In this regard, Plaintiffs' attorneys are only requesting to be paid on an hourly basis and, therefore, it is not necessary to address lodestar factors.
 "THE ATTORNEYS FEES HEARING "At the hearing, Plaintiffs presented the testimony of three highly respected lawyers practicing in the Montgomery Metropolitan area. . . . The Plaintiffs also presented the testimony by affidavit of . . . a retired appellate court judge, . . . [and] an expert on administrative law.
 "ADEM, at the hearing, stipulated to the qualifications of counsel for the Plaintiffs and the Court also acknowledged this fact. The Court understood ADEM's `stipulation' as to the qualifications of Plaintiffs' counsel to mean that ADEM acknowledged that [Plaintiffs' counsel] are highly competent and qualified lawyers who are particularly wellsuited to handle a case of this type and the Court agrees with this assessment.
 ". . . .
 "In addition, in its post-hearing brief, ADEM did not contest the `qualifications' of Plaintiffs' counsel. It therefore seems unnecessary for this Court to address the elements to be considered on the fee issue which concern the experience, reputation, skill and other `qualifications' of Plaintiffs' counsel as it is undisputed that they are imminently qualified.
 "Although ADEM maintains that Plaintiffs' attorneys are not entitled to attorneys fees and contests the number of hours claimed, no evidence has been presented to show that the hourly rates requested by the attorneys are unreasonable.
 "COUNSEL'S ENTITLEMENT TO A FEE "The special equity `common benefit' exception to the general rule that each party is to bear its own attorneys fees has been recognized by the courts of this State. See e.g., Brown v. State, 565 So.2d 585 (Ala. 1990); Bell v. The Birmingham News Co., 576 So.2d 669 (Ala.Civ.App. 1991); Ex parte Horn, *Page 1187 648 So.2d 607 (Ala.Civ.App. 1994); Ex parte Horn, 718 So.2d 694 (Ala. 1998); Ex parte Hooks, 728 So.2d 631 (Ala. 1998); City of. Birmingham v. Horn, 810 So.2d 667 (Ala. 2001). Those cases held that attorneys fees may be awarded by a court when `the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff.' Horn, 718 So.2d at 702.
 "There is no question in this Court's opinion, that in this case counsel for the Plaintiffs have rendered a public service which resulted in a benefit to all of the citizens of this State. By their efforts, counsel for the Plaintiffs forced ADEM to adopt a State Plan which will ensure that all permits for solid waste facilities in this State will be in compliance with local, regional, and statewide planning. It is certainly significant that ADEM failed to adopt the State Plan for thirteen (13) years after the legislature mandated that it adopt a State Plan as a final regulation, and for an additional year and half after it was pointed out in this case that it had not been adopted.
 "Attorneys fees are particularly fitting when public service stops `longstanding or clear violations of state law" in `direct contravention of state statutes. Advertiser Co. v. Auburn University, 579 So.2d 645, 648 (Ala.Civ.App. 1991). It cannot be argued that the failure to adopt the State Plan for 13 years after the legislature plainly and unambiguously told ADEM to adopt it as final regulation was not a longstanding and clear violation of state law. Indeed, Chief Counsel for ADEM, in her brief of May 1, 2002, does not contest the fact that the legislature of this State required that the state Solid Waste Management Plan be adopted as a final regulation, but simply states that because ADEM concluded that the original drafts of the Plan contain what it perceived to be unauthorized or unconstitutional provisions, it made the conscious choice to simply ignore the legislative mandate (see p. 28 thereof).
 "ADEM cannot simply pick and choose which statutes it will follow. And it cannot ignore the legislature mandating that it develop and adopt a State Plan as a final regulation. The result is that ADEM consciously, and has willfully, refused to do what the legislature told them to do. Knowing and willful failure by a governmental agency to follow the law is one of the grounds upon which attorneys fees may be awarded. Bell, supra; Brown, supra.
 "The Plaintiffs have performed an enormously valuable public service in making this fact apparent to ADEM despite its efforts to get the legislature to repeal the requirement that it must adopt a State Plan. With the adoption of the Plan on February 5, 2002, as a final regulation, the public now has in place a comprehensive solid waste management plan with which ADEM, landfill proponents and operators, as well as the public must comply.
 ". . . .
 "Wherefore, it is hereby ORDERED as follows:
 "1. That based on this Court's equitable powers as cited by the Supreme Court of Alabama in Brown v. State, 565 So.2d 585 (Ala. 1990), Plaintiffs' attorneys are awarded interim fees and expenses in the amount of $338,618.59 and a judgment is hereby entered in favor of [Plaintiffs' counsel] and against [ADEM] for said amount.
 "2. That the Court specifically reserves jurisdiction over any future award of attorneys fees."
(Footnotes omitted.)
ADEM appealed the order awarding interim attorney fees to the Alabama Supreme *Page 1188 
Court. The Supreme Court transferred the case to this court on jurisdictional grounds.
On appeal, ADEM makes numerous arguments. We find it unnecessary to address all but one of ADEM's arguments, namely, that the award of attorney fees against it was prohibited by § 14 of the Alabama Constitution.
Section 14 of the Alabama Constitution of 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity." As has often been reiterated,
 "`The wall of immunity erected by § 14 is nearly impregnable. . . . This immunity may not be waived. . . . "This means not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury." State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932) (emphasis added).'"
Alabama Agric. Mech. Univ. v. Jones,895 So.2d 867, 872-73 (Ala. 2004) (quoting Patterson v. GladwinCorp., 835 So.2d 137, 142 (Ala. 2002)). In erecting a "wall of immunity," § 14 of the Constitution provides to the State a defense that is binding upon the executive, legislative, and judicial branches alike, and that cannot be waived for purposes of a given suit, or for lawsuits generally, by any of these three branches. See, e.g., Ex parte Hudson,866 So.2d 1115, 1125 n. 9 (Ala. 2003) (as to the Legislature and the Alabama Supreme Court); Ex parte Cranman,792 So.2d 392, 399 (2000) (plurality opinion) (as to the Legislature and the Alabama Supreme Court); and Dunn Constr. Co. v. StateBd. of Adjustment, 234 Ala. 372, 376, 175 So. 383, 386
(1937) ("At common law the state was not subject to suit save by its own consent. . . . The present Constitution, section 14, goes further. It wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state."). See also, e.g., Patterson,835 So.2d at 142 ("an action against the State within the meaning of § 14. . . . presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent"); and Larkins v. Department of Mental Health MentalRetardation, 806 So.2d 358, 363, 364 (Ala. 2001) (explaining that § 14 "`"`wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state,'"'" and holding that § 14 "`thus removes subject-matter jurisdiction from the courts when an action is determined to be one against the State'" (quoting AlabamaState Docks Terminal Ry. v. Lyles, 797 So.2d 432, 435
(Ala. 2001), quoting in turn other cases)).[4]
It is well established that state immunity under § 14 extends to state agencies. As the Supreme Court observed inDunn Construction Co., "[s]uits against *Page 1189 
the state include suits against state agencies as widely considered in our cases." 234 Ala. at 376, 175 So. at 386.See, e.g., Alabama Agric. Mech. Univ. v. Jones,895 So.2d at 873 ("`Alabama A M University is an instrumentality of the State of Alabama and, thus, is absolutely immune from suit under § 14.'" (quoting Matthews v.Alabama Agric. Mech Univ., 787 So.2d 691, 696
(Ala. 2000))); Haley v. Barbour County, 885 So.2d 783,788 (Ala. 2004) (stating that § 14 "affords the State and its agencies an `absolute' immunity from suit in any court");State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 633,11 So.2d 342, 346 (Ala. 1943), superseded, in part, on othergrounds, Ala. Code 1940, tit. 7, § 167 ("[U]nder no circumstances and in no sort of suit can the State of Alabama ever be made a defendant in any court of law or equity. This prohibition cannot be waived, and it cannot be avoided by suing a State agency when the substance and effect is a suit against the State."); State Docks Comm'n v. Barnes,225 Ala. 403, 405, 143 So. 581, 582 (1932); and Hutchinson v. Boardof Trustees of Univ. of Alabama, 288 Ala. 20, 24,256 So.2d 281, 284 (1971).[5]
Whether a suit, a claim, or a request for relief within a suit is "in substance and effect" one against the State depends on the nature of the suit or the relief sought. As our Supreme Court recently reiterated, "`[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate.'"Alabama Agric. Mech. Univ. v. Jones,895 So.2d at 873 (quoting Shoals Cmty. Coll v. Colagross,674 So.2d 1311, 1314 (Ala.Civ.App. 1995) (emphasis omitted)).
In Moody v. University of Alabama, 405 So.2d 714, 717
(Ala.Civ.App. 1981), this court explained that the plaintiff was
 "in effect, seeking a ruling which would require the state to pay her a sum *Page 1190 
greater than the $939.47 awarded by the board. Clearly, a ruling in her favor could ultimately `touch' the state treasury by requiring the disbursement of state funds. For this reason, we find that § 14 bars this action."
This court's opinion in Moody addressed an action seeking a declaratory judgment and, therefore, is particularly instructive with respect to the present case. As the court further explained:
 "[W]hile an action for declaratory judgment against the state or its agencies which seeks the interpretation of a statute is generally not prohibited, . . . such an action is prohibited when, as here, a result favorable to the plaintiff would directly affect a contract or property right of the state."
Moody, 405 So.2d at 717.
In Haley, a case involving a claim against a public official, the Supreme Court explained that, in determining the limitations imposed by § 14,
 "`[a] [c]ourt will consider such factors as the nature of the action and the relief sought.' Phillips v. Thomas, 555 So.2d 81, 83
(Ala. 1989). Such factors include whether `a result favorable to the plaintiff would directly affect a contract or property right of the State,' Mitchell [v. Davis,] 598 So.2d [801,] 806 [(Ala. 1992) ], whether the defendant is simply a `conduit' through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784
(Ala. 1988), and whether `a judgment against the officer would directly affect the financial status of the State treasury,' Lyons [v. River Road Constr., Inc.,] 858 So.2d [257,] 261 [(Ala. 2003) ]."[6]
Haley, 885 So.2d at 788. See also Aland v.Graham, 287 Ala. 226, 229, *Page 1191 250 So.2d 677, 679 (1971) ("In determining whether an action against a State officer is a suit against the State in violation of the constitutional prohibition, the court considers the nature of the suit or the relief demanded.").
But for a 1990 decision of our Supreme Court, the above-cited authorities would be sufficient to enable us to answer the question before us. The additional case that requires us to extend our analysis is Brown v. State, 565 So.2d 585
(Ala. 1990) ("Brown I").[7]
In Brown I, Brown and another plaintiff, Duncan, filed a class action "against the State of Alabama, the City of Montgomery, and others on behalf of themselves and all those who had been convicted of traffic offenses based upon improperly verified [Uniform Traffic Ticket and Complaint forms]."565 So.2d at 586. In part, Brown and Duncan alleged that criminal proceedings had been improperly initiated against them and a large class of plaintiffs because the arresting officers had failed to appear before the clerk of court to have their complaints verified. In connection with seeking declaratory and injunctive relief, Brown and Duncan requested that the trial court award them attorney fees. The trial court certified two subclasses of plaintiffs, subclass A and subclass B. Subclass B was comprised of individuals who were convicted of an offense described on the Uniform Traffic Ticket and Complaint ("UTTC") where the complaint appeared to be properly verified on its face but was not in fact properly verified.
The trial court also certified a class of defendants comprised of
 "`[a]ll municipal corporations within the State of Alabama which maintain and operate municipal courts hearing traffic infractions based on the Uniform Traffic Ticket and Complaint and which have imposed fines and court costs and other penalties against members of the Plaintiffs' class as above defined, exclusive of municipalities within the 10th Judicial Circuit.'"
Brown I, 565 So.2d at 586. The trial court also ruled that the class action "`shall further be maintained against the State of Alabama as an individual Defendant, and against the City of Montgomery individually and as a representative of the class of defendants of municipal corporations.'" Id. at 587.
The trial court dismissed the claims of subclass B. Our Supreme Court affirmed that dismissal, noting that the plaintiffs had produced no evidence of fraud or corruption on the part of any state, county, or municipal officer, though they had been successful in ending the flawed administrative practice used by the arresting officers. Id. at 590. The Court relied heavily on the rationale of Callahan v. Wallace,466 F.2d 59 (5th Cir.1972), in which the plaintiffs asserted a violation of their due-process rights under the United States Constitution. More specifically, Callahan was a class action filed pursuant to 42 U.S.C. § 1983 "against all justices of the peace *Page 1192 
and all sheriffs in Alabama, the Director of the Department of Public Safety (who is in charge of Alabama state troopers), and the State Comptroller" in regard to the practice of trying traffic cases before justices who had a pecuniary interest in convicting the defendants. Callahan, 466 F.2d at 60.
In Callahan, "[t]he District Court granted full injunctive relief but declined to award damages, to order refund of the fines and to award attorney fees"; the plaintiffs appealed the district court's "refusal to order the refund of fines and to grant attorney fees." Id. The United States Court of Appeals for the Fifth Circuit affirmed the district court's refusal to order a refund of fines, but it reversed the district court's refusal to award attorney fees because, it held, the plaintiffs had helped to end an improper statewide practice. Id. at 62.
Based on Callahan, our Supreme Court stated inBrown I:
 "The fact that this litigation, by virtue of our rationale and holding, has not produced a monetary recovery does not preclude an award of attorney fees. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-93, 90 S.Ct. 616, 625-26, 24 L.Ed.2d 593
(1970), states the rule as follows:
 "While the general American rule is that attorney's fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself.
 "`. . . .
 "`The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. . . .'
 "The litigation clearly resulted in a benefit to the general public. It is unquestionable that plaintiffs' attorneys rendered a public service by bringing an end to an improper practice. The public nature of the services rendered by these lawyers justifies an award of attorney fees. See Callahan v. Wallace, supra, at 62."
Brawn I, 565 So.2d at 591-92. The Supreme Court then remanded the case to the trial court for a determination as to the amount of attorney fees to be awarded.
Although cited by the trial court in support of its judgment in this case, we cannot conclude that Brown I has any controlling precedential impact on the present case. This is so for two separate reasons.
First, it is not discernible from Brown I that a state-law theory served as the basis for the relief requested in that case, as it does here. For all that appears from the Supreme Court's opinion, federal law served as at least one basis for the plaintiffs' underlying claim, as a class, for substantive relief. Concomitantly, for all that appears from that opinion, federal law provided the basis for an award of an attorney fee to the plaintiff class.
At the beginning of its discussion of the issue, the BrownI Court explains that the plaintiffs' complaint "was styled a `Petition for Writ of Habeas Corpus or in the Alternative Bill for Declaratory Judgment, Injunctive or Other Relief.'"Brown I, 565 So.2d at 586. The Court offers no explanation of the legal theory or theories upon which the plaintiffs' underlying claims as a class were based; instead, it proceeds in the next sentence to explain the specific nature of the remedy sought *Page 1193 
by the complaint, namely the expungement of improperly verified UTTC convictions and the return to the plaintiffs of all fines and costs paid as a result of the convictions. As noted, the Supreme Court in Brown I relied heavily upon the federal court's decision in Callahan. Again,Callahan was a case in which the plaintiffs' underlying claims were based on federal law; they sought relief under42 U.S.C. § 1983 for an alleged denial of due process. Federal law, specifically 42 U.S.C. § 1988, expressly authorizes an award of attorney fees to a prevailing party in a § 1983 action, and, based on federal supremacy and the application of the Fourteenth Amendment of the United States Constitution, it overrides a state's immunity. See Maher v. Gagne,448 U.S. 122, 131-32, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); andState Bd. of Educ. v. Waldrop, 840 So.2d 893, 902
(Ala. 2002) (Lyons, J, concurring specially).
In State Board of Education v. Waldrop, the Board of Education appealed from an attorney-fee award that was based on the so-called "common-benefit" exception to the American rule regarding attorney fees, i.e., that each party pays its own fees. The Board argued, in part, that the evidence did not support the trial court's determination that a common benefit had been produced and that the award was barred by the State's immunity. The Supreme Court determined that the record did not support the trial court's determination that Waldrop's lawsuit had resulted in a common benefit to the public and it reversed the judgment awarding attorney fees. The Supreme Court made no statement regarding whether state immunity might have barred the attorney-fee award, though it did state: "We do not hold that attorney fees may never be awarded against the State Board of Education or against the local boards under a common-benefit theory." Waldrop, 840 So.2d at 902. In an opinion concurring specially, Justice Lyons stated:
 "I write specially to note my reservations concerning the consistency of this Court's decision in [Brown I] with Art. I, § 14, Alabama Constitution of 1901 ("That the State of Alabama shall never be made a defendant in any court of law or equity.').
 "The Board contends that sovereign immunity precluded the award of an attorney fee against it in this case. However, in its brief to this Court, the Board, while attempting to support its immunity argument by showing that Waldrop's claims sound in tort, correctly observed that the complaint asserted claims arising under the Civil Rights Act, 42 U.S.C. § 1981 et seq. Of course, 42 U.S.C. § 1988, legislation implementing the Fourteenth Amendment, permits the prevailing party to recover an attorney fee.
 "Under the Supremacy Clause of the United States Constitution (Art. VI), in tandem with the Fourteenth Amendment, the attorney fees permitted by 42 U.S.C. § 1988 are recoverable, notwithstanding a provision of a state constitution that might otherwise afford immunity to the party against whom the fees are sought. . . .
 "The question whether the liability of the State for payment of an attorney fee as recognized in [Brown I] is properly confined to cases arising under statutes such as 42 U.S.C. § 1988 must await another day."
Waldrop, 840 So.2d at 902-03 (Lyons, J., concurring specially) (emphasis added).
Similarly, in Alabama Alcoholic Beverage Control Board v.City of Pelham, 855 So.2d 1070 (Ala. 2003), the State challenged an award of attorney fees on the ground of state immunity and on the ground that the *Page 1194 
City of Pelham had not met its burden of proof under the common-benefit exception. In prelude to deciding the case on the latter ground (i.e., that the City of Pelham had not bestowed a common benefit on the general public), our Supreme Court stated:
 "This Court has held that State funds may be used to award attorney fees to plaintiffs who bestow a common benefit to the named plaintiffs as well as the public. [Brown I], 565 So.2d at 591-92. Laying to one side concerns over the applicability of [Brown I] to this proceeding where no federally created right to an attorney fee is presented,[7] we must determine whether the City bestowed a common benefit.
 "[7] See Waldrop, supra, 840 So.2d at 902 (Lyons, J., concurring specially and noting reservations concerning the consistency of [Brown I], cited in the main opinion in Waldrop, with Art. I, § 14, Ala. Const, of 1901)."
Alabama Alcoholic Beverage Control Bd.,855 So.2d at 1084 (emphasis added).[8]
Second, regardless of the underlying basis for the relief inBrown I, there simply is no mention in the BrownI opinion of the issue of state immunity.
 "For a case to be stare decisis on a particular point of law, that issue must have been raised in the action, decided by the court, and its decision made part of the opinion of the case; accordingly, a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced."
20 Am.Jur.2d Courts § 153 (1995) (footnotes omitted). As our Supreme Court recently observed, "[a]rguments based on what courts do not say, logically speaking, are generally unreliable and should not be favored by the judiciary;this is especially true when the judiciary is faced with, aswe are here, a contrary constitutional mandate." Ex parteJames, 836 So.2d 813, 818 (Ala. 2002) (emphasis added).See also Pennhurst State School Hosp. v.Halderman, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67
(1984) ("When questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.'" (quoting Hagans v.Lavine, 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372,39 L.Ed.2d 577 (1974))); and American Portland Cement Alliance v.Environmental Protection Agency, 101 F.3d 772, 776
(D.C. Cir.1996) ("That the court has taken jurisdiction in the past does not affect the analysis because jurisdictional issues that were assumed but never expressly *Page 1195 
decided in prior opinions do not thereby become precedents.").
Even more recently, in Haley v. Barbour County, a case which we discuss at more length hereinbelow, the Supreme Court reversed a trial court's award of monetary contempt sanctions against a state official, in his official capacity, based on § 14. The Court distinguished the earlier case of Carterv. State ex rel. Bullock County, 393 So.2d 1368 (Ala. 1981), as follows:
 "We do note that in Carter v. State ex rel Bullock County, 393 So.2d 1368 (Ala. 1981), this Court upheld a contempt `fine' against a county tax assessor who was being sued in both his official and individual capacities; however, the opinion in Carter
did not address whether the sanctions violated § 14."
Haley, 885 So.2d at 789 n. 7. Similarly, because the Supreme Court's opinion in Brown I did not address whether the award of an attorney fee violates § 14 of the Alabama Constitution, we properly do not construe BrownI as binding precedent for the proposition that state immunity under § 14 of the Constitution is not a valid defense to a claim against a state agency for the award of an attorney fee.
On remand from Brown I, the trial court followed the Supreme Court's mandate to make a determination as to the appropriate amount of attorney fees to be awarded to the Class B litigants. On appeal from the judgment on remand, our Supreme Court stated in State v. Brown, 577 So.2d 1256
(Ala. 1991) ("Brown II"):[9]
 "We . . . remanded the case to the trial court for proceedings to determine the amount of attorney fees to be awarded. The question before the trial court was not whether to award attorney fees, but what amount should be awarded.
 ". . . .
"On appeal, the state attempts to reargue [Brown I]. It contends that the plaintiff class was not entitled to attorney fees as a matter of law, and second, that the plaintiff class was not entitled to attorney fees becausethe plaintiffs did not prevail. These are the samematters that were the subject of the State's application for rehearing in [Brown I]. Rule 40, [Ala.] R.App. P., prohibits us from revisiting these issues.
"We observed in Glasscock v. Wallace, 488 So.2d 1346
(Ala. 1986), that an attempt in a subsequent appeal to overturn a ruling on an issue that has been decided in a prior appeal is improper. We stated as follows:
 "`Other than the issue as to whether Governor Wallace's Rule 60(b)(6) motion was due to be granted, plaintiff argues only that this Court should revisit its prior decision in this case because it reversed on a ground not raised by the parties.
 "`This Court overruled Glasscock's application for rehearing in the prior appeal of this case. His request that we now overturn the prior decision amounts to a second application for rehearing. "No second application for rehearing will be considered unless the rehearing reversed or substantially modified the original opinion of the court." Rule 41, [Ala.] R. Civ. P. Furthermore, the decision in the prior appeal is the law of the case. Congress of Industrial Organizations v. McAdory, 246 Ala. 198[, 20 So.2d 40] (1944), cert. dismissed, 325 U.S. 472, 65 S.Ct. 1395, 89 L.Ed. 1741 (1945); Premier Industrial Corp. v. Marlow, 292 Ala. 407, 295 So.2d 396 (1974), cert. denied, 419 U.S. 1033, *Page 1196 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). Because the appeal raises only this issue regarding the judgment against Teague and the Department of Education, it is due to be dismissed as to these defendants.'
"488 So.2d [at] 1348.
 "Accordingly, the only issue before us is whether the award of attorney fees was excessive."
Brown II, 577 So.2d at 1257-58 (emphasis added).
Justice Maddox dissented in Brown II, stating:
 "The State of Alabama, by and through the Attorney General, raised in the trial court, and in this Court, a constitutional issue of the right of this Court to award attorney fees against the State of Alabama, in view of the provisions of Section 14
of the Constitution of Alabama 1901.[4]
Unfortunately, the Court has elected not to address this important constitutional question, by stating that it is an issue that was decided adversely to the State on original deliverance and on rehearing, and that the State is attempting to raise the issue for a second time. I believe the Court is mistaken in thinking that the constitutional issue was raised in the State's application for rehearing in [Brown I]. I have checked the original briefs and the application for rehearing in that case, and I conclude that the constitutional issue was not raised. Normally, this Court will address a constitutional claim that is properly raised in the trial court.
 "[4] As shown in footnote [3], supra, the constitutional issue was raised in a motion for summary judgment, supported by affidavits and other evidence."
Brown II, 577 So.2d at 1261 (Maddox, J., dissenting, with one justice concurring) (emphasis on "issue" added).
Based on the plain language of Brown II, our Supreme Court did not address the merits of the state-immunity argument in that case. Like Brown I, therefore, BrownII also is properly viewed as not having a binding precedential effect on the case before us. See, e.g., Haley,supra; and Ex parte James, supra. Nor is our view of Brown I altered by the above-quoted comments in the main opinion in Brown II that at first blush may appear to be in conflict with Justice Maddox's view of BrownI. In this regard, we offer the following two observations:
(1) It is not necessary to discredit Justice Maddox's reading of the record on rehearing in Brown I in order to reconcile his view of the record and the majority opinion inBrown II. We see nothing in the majority opinion inBrown II stating that the specific "issue" of stateimmunity was raised on rehearing in Brown I.
The Supreme Court in Brown I reversed the judgment of the trial court, deciding for the first time in the litigation that attorney fees were to be awarded against the State. Regardless of what went into that decision, that decision and the accompanying mandate of the Court in Brown I became the law of the case. While the majority opinion in BrownII explains that the State challenged the propriety of such an award on rehearing in Brown I, it notes only that the "matters" of whether the plaintiff class was entitled to an attorney fee "as a matter of law" and whether the "plaintiffs did . . . prevail" were contested on the application, for rehearing in Brown I. Brown II, 577 So.2d at 1257. The majority opinion does not say that the issue of immunity was raised in the rehearing. The opinion observed that the State had taken the opportunity on rehearing in Brown I to challenge the Court's holding that attorney fees were to *Page 1197 
be awarded on remand. See Rule 40(a), Ala. R.App. P. It then went on to hold that it could not revisit that issue in a subsequent appeal without violating the principle of "the law of the case." Nothing more than this general principle of the law of the case is derived from a careful review of theGlasscock v. Wallace, 488 So.2d 1346 (Ala. 1986), opinion upon which the Brown II Court relied.
(2) Even assuming for the sake of argument that the majority opinion in Brown II is construed as stating that the specific issue of state immunity was actually raised on rehearing in Brown I, this statement was dictum. The fact is, regardless of whether the Brown I Court considered the issue, the Court issued an opinion in BrownI that mandated the award of attorney fees. The time to challenge that mandate would have been in conjunction with that same appeal; any subsequent challenge to that mandate would be an impermissible collateral attack. In point of fact, therefore, the only rationale necessary for the rejection of the State's immunity challenge in Brown II was the law-of-the-case doctrine that the majority opinion in Brown II then proceeds to discuss; anything beyond that was unnecessary to the court's decision and therefore is properly viewed as dictum.
The trial court's judgment in the present case also purports to rely upon Hanrahan v. Hampton, 446 U.S. 754,100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), and James v. Alabama Coalitionfor Equity, Inc., 713 So.2d 937 (Ala. 1997). Those decisions, however, were based on federal statutes that overrode the State's immunity under § 14.
The trial court cited a number of other Alabama cases addressing whether attorney fees should be awarded to a plaintiff under the so-called common-benefit exception to the American rule. These and similar cases do not discuss whether immunity under § 14
of the Alabama Constitution serves to protect state coffers from an award of attorney fees against either the State or a state agency when there is no federal authority for such an award.See City of Birmingham v. Horn, 810 So.2d 667
(Ala. 2001) (appeal from an attorney-fee award against the City of Birmingham containing no discussion of state immunity);Ex parte City of Birmingham, 757 So.2d 389 (Ala. 1999) (appeal from an attorney-fee award against the City of Birmingham containing no discussion of state immunity); Exparte Hooks, 728 So.2d 631, 631 (Ala. 1998) (reversing and remanding Calhoun County Commission v. Hooks,728 So.2d 625 (Ala.Civ.App. 1997), in which this court reversed the trial court's award of attorney fees against the Calhoun County Commission and which contained no discussion of state immunity, to this court "for reconsideration in light of Ex parteHorn, 718 So.2d 694 (Ala. 1998)"); Ex parte Horn,718 So.2d 694 (Ala. 1998) (holding that attorney fees could be awarded against the City of Birmingham under the common-benefit theory, but not discussing state immunity); Horn v. City ofBirmingham, 648 So.2d 607 (Ala.Civ.App. 1994) (holding that attorney fees could be awarded against the City of Birmingham under the common-benefit theory, but not discussing state immunity); Advertiser Co. v. Auburn Univ.,579 So.2d 645 (Ala.Civ.App. 1991) (addressing a declaratory-judgment action against Auburn University, but containing no discussion of state immunity); Bell v. Birmingham News Co.,576 So.2d 669 (Ala.Civ.App. 1991) (addressing an action for an injunction against the members of the Birmingham City Council, but containing no discussion of state immunity).[10] See alsoSlawson v. Alabama Forestry *Page 1198 Comm'n, 631 So.2d 953 (Ala. 1994) (remanding the case for a determination of whether an award of attorney fees was appropriate in a case in which the Alabama State Forestry Commission and other parties were named as defendants, but containing no discussion of state immunity).
In their brief to this court, Lowndesboro and Frazer direct us to several other recent decisions of our courts referring to attorney-fee awards and § 14 immunity. A careful review of those cases, however, also reveals that our Supreme Court has not been required to address the state-immunity issue in order to decide them. For example, in State Board of Education v.McClain, 810 So.2d 763 (Ala.Civ.App. 2000), rev'd, Exparte State Board of Education, 810 So.2d 773 (Ala. 2001), this court held that § 14 did not bar an award of attorney fees against the State because the underlying suit fell within one of the exceptions to state immunity, namely, compelling state officials to perform their legal duties.810 So.2d at 770-71. Our Supreme Court, however, concluded that the Board's decision whether to accept or reject the federal funds at issue was discretionary and that it did not fall within the § 14 exception that allows an action to compel state officials to perform their legal duties. Ex parte State Bd. ofEduc., 810 So.2d at 776. The Supreme Court reversed this court's decision, stating: "Because the Board's initial decision not to accept the federal funds earned § 14 sovereign immunity, McClain would not have been able to maintain his action in the event the Board had not reversed its decision not to accept the federal funds." Id. Thus, unlike the present case, the underlying claim in Ex parte State Boardof Education was barred by § 14, and therefore it was not necessary for the Supreme Court to decide whether § 14 bars an award of attorney fees when an action could be maintained against the State. To the extent this court's decision in State Board of Education v. McClain,810 So.2d 763, continues to stand for the proposition that § 14 does not bar an award of attorney fees if the underlying suit falls within one of the exceptions to state immunity, that decision is hereby overruled.
Other cases have involved the issue of attorney-fee awards in the context of a § 14 argument, but they have been decided on grounds other than § 14. See State Board of Educ. v.Waldrop, 840 So.2d 893 (discussed supra). Seealso Legal Envtl. Assistance Found., Inc. v. Alabama Dep't ofEnvtl. Mgmt, 883 So.2d 198, 202 (Ala.Civ.App. 2003) (Stating, in the context of an appeal from the denial of an attorney-fee award, that "[i]t is not clear whether the trial court relied on [state immunity] as the basis of its judgment. Given LEAF's failure to properly argue this issue before the trial court, we decline to address it on appeal."); StateDep't of Human Res. v. Kelly, 623 So.2d 738
(Ala.Civ.App. 1993) (discussing sovereign immunity in the context of the merits of the underlying claim, but not as to the award of attorney fees); Alabama Alcoholic BeverageControl Bd. v. City of Pelham, 855 So.2d 1070 (Ala. 2003); and Ex parte State Dep't of Revenue, 792 So.2d 380, 384
(Ala. 1999) ("Given our holding that the Circuit Court erroneously entered the summary judgment for the taxpayer, it is clear that the taxpayer is not entitled to an award of attorney fees on the basis that he has bestowed a common benefit on all taxpayers similarly situated."). *Page 1199 
We return to the language of the Constitution. Section 14 simply states that "the State of Alabama shall never be made a defendant in any court of law or equity." We likewise return to the basic principle that an action is one against the State when, among other things, the relief sought will impact the State treasury. Having reviewed our Supreme Court's opinion inBrown I, as well as the opinion in Brown II
and other pre-and post-Brown decisions, we conclude that no decision of our Supreme Court stands as precedent for the proposition that the language of § 14 serves to protect the State treasury any differently from an award of attorney fees than from an award of money damages. Qualitatively, the effect on the treasury — and ergo the implication for the immunity of the State — would be the same in both cases.
Corroborating the dispositive import of the basic principle against invasion of the state treasury that underlies our holding today is the recent decision of our Supreme Court inHaley v., Barbour County, 885 So.2d 783. Haley
involved an action by several counties and sheriffs against the commissioner of the Department of Corrections, in his official capacity, seeking an injunction requiring the commissioner to accept state inmates into Department of Corrections facilities after they had been sentenced, rather than leaving them in county jails. The trial court entered a preliminary injunction against the commissioner that required him "to accept a convicted state inmate within 30 days of receiving an inmate's transcript." Haley, 885 So.2d at 785. Thereafter, the counties and sheriffs filed a motion for an order to show cause why the commissioner should not be held in contempt of court, in part, for his alleged violation of the preliminary injunction. The trial court determined that the commissioner had violated its preliminary injunction. It held the commissioner in civil contempt and ordered him to pay monetary sanctions to the counties.
On appeal, the commissioner argued that the monetary sanctions violated § 14. The Supreme Court held:
 "Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261
(Ala. 2003); Mitchell v. Davis, 598 So.2d 801, 806 (Ala. 1992). `In determining whether an action against a state officer or employee is, in fact, one against the State, [a] [c]ourt will consider such factors as the nature of the action and the relief sought.' Phillips v. Thomas, 555 So.2d 81, 83
(Ala. 1989). Such factors include whether `a result favorable to the plaintiff would directly affect a contract or property right of the State,' Mitchell, 598 So.2d at 806, whether the defendant is simply a `conduit' through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784
(Ala. 1988), and whether `a judgment against the officer would directly affect the financial status of the State treasury,' Lyons, 858 So.2d at 261. Moreover, we note that claims against state officers in their official capacity are `functionally equivalent' to claims against the entity they represent. Hinson v. Holt, 776 So.2d 804, 810 (Ala.Civ.App. 1998) In this case, the commissioner represents DOC, which, as a department of the State, is entitled to sovereign immunity. Rodgers v. Hopper, 768 So.2d 963, 968 (Ala. 2000) (holding that DOC is entitled to sovereign immunity under § 14, because a judgment against it would be paid from the treasury of the State).
 "The issue presented in this case is whether, in light of § 14, the commissioner, in his official capacity, may be *Page 1200 
assessed civil sanctions for his failure to comply with the trial court's injunctive orders. The parties are unable to provide this Court with any precedent directly addressing this issue; indeed, this Court has found no caselaw addressing whether § 14 prevents the trial court from assessing contempt sanctions against the State.
 "It is clear that the particular sanctions in this case `directly affect the financial status of the state treasury.' Lyons, 858 So.2d at 261. While the counties claim that the sanctions punish the commissioner for his contempt and seek to compel compliance with the court's orders, the effect of the trial court's order is to impact the treasury and divest it of funds. Section 1U, however, forbids such an assault on the state treasury. See Lyons, 858 So.2d at 261; see also Patterson, 835 So.2d at 142 (holding that § 14 prevents the State from being sued, and a suit against the state `"cannot be indirectly
accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury."' (quoting State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932))); and Southall v. Stricos Corp., 275 Ala. 156, 158, 153 So.2d 234, 236 (1963) (holding that an action against an officer was not an action against the State, because the relief sought would not `take away any property of the State, or fasten a lien on it, or interfere with the disposition of funds in the treasury'). Thus, we hold that the trial court's order assessing against the commissioner in his official capacity monetary sanctions for contempt violates § 14."
Haley, 885 So.2d at 788-89 (some emphasis original, some emphasis added; footnotes omitted). See also AlabamaAgric. Mech. Univ. v. Jones, 895 So.2d at 882
(denying a tenured professor's claim for retrospective monetary relief against the State in conjunction with injunctive relief because the retrospective monetary relief was prohibited by § 14); State v. Pullman-Standard Car, 235 Ala. 493,179 So. 541 (1938) (holding that § 14 prohibits the awarding of costs against the State as a defendant); cf.State v. Inman, 239 Ala. 348, 359, 195 So. 448, 458 (1940) (opinion on rehearing) (distinguishing between an award of costs against the State, as a defendant, which is "against the provisions of [§ 14] of the Constitution," and an award of costs against the State when it "is a party plaintiff').
In addition to the straightforward nature of the principle applied in Haley, that case's significance for our purposes today is further enhanced by two facts. First, the power to punish a party for contempt at issue in Haley
is an inherent power of the court. See, e.g., Ex parteWetzel, 243 Ala. 130, 132, 8 So.2d 824, 825 (1942). Likewise, our courts have held that the equitable exception to the American rule regarding attorney fees upon which Lowndesboro and Frazer base their claim is attributable to the inherent power of the court. See, e.g., Alabama Alcoholic BeverageControl Bd. v. Pelham, 855 So.2d at 1083 (quoting Exparte Horn, 718 So.2d at 702). The Supreme Court's decision in Haley stands for the proposition that the inherent nature of the trial court's power does not extend to an invasion of the state treasury in the face of a § 14 challenge.
Moreover, Lowndesboro and Frazer's central argument regarding attorney fees is that an attorney-fee award that would otherwise be permissible under our law (i.e., because it falls within one of the recognized exceptions to the American rule), is not barred by § 14 of the Constitution if the underlying claim in connection *Page 1201 
with which the claim for a fee is made is not barred by § 14. In Haley, however, the underlying claim was not barred by state immunity. That fact did not prevent the Supreme Court from unequivocally "drawing the line" at the plaintiffs' attempt to extend the State's vulnerability to suit to a form of relief that would invade the state treasury.
We also note that courts in other jurisdictions have held that state-immunity provisions bar the award of attorney fees even when the underlying action is not barred. See, e.g., Doe v.Heintz, 204 Conn. 17, 526 A.2d 1318 (1987) (holding that though an action for declaratory relief and injunctive relief may proceed against state officials to enjoin them from illegal acts, sovereign immunity prevents an award of attorney fees);University of West Virginia Bd. of Trustees v. Graf,205 W.Va. 118, 516 S.E.2d 741 (1998) (holding that though the underlying action fell within an exception to constitutional state immunity, which allowed recovery up to the state's liability insurance coverage, the damages award to the plaintiff had exhausted the insurance coverage and that, therefore, the attorney-fee request should have been denied because the remaining source of relief would have come from the state treasury). See also United States v. Horn, 29 F.3d 754,765-66 (1st Cir.1994) ("The straw that snaps the camel's back is that the appellees have offered no plausible explanation why the shield of immunity should leave the government exposed to fee awards designed as sanctions for litigation abuse, but simultaneously protect it from fees or other monetary awards routinely given to prevailing parties as virtual bonuses to reward litigatory success. The simple, unarguable fact is that any and all such fee awards would deplete the public coffers, and, consequently, they all must stand on the same footing vis-à-vis principles of sovereign immunity. It follows inexorably that, absent a statute or rule effecting a waiver, the secondary principle of sovereign immunity bars fee-shifting awards against the government, whatever their intended purpose.").[11] *Page 1202 
In the early case of Alabama Girls' Industrial School v.Reynolds, 143 Ala. 579, 42 So. 114 (1904), the Supreme Court adopted the following stated principle from the United States Supreme Court's decision in Smith v. Reeves,178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900):
 "`Although the State, as such, is not made a party defendant, the suit is against one of its officers as treasurer; the relief sought is a judgment against that officer in his official capacity, and that judgment would compel him to pay out of the public funds in the treasury of the State a certain sum of money. Such a judgment would have the same effect as if it were rendered directly against the State for the amount specified in the complaint.'"
Alabama Girls' Indus. School, 143 Ala. at 583-84,42 So. at 115 (quoting Smith, 178 U.S. at 438-39,20 S.Ct. 919) (emphasis omitted). If then the fact that an order requires the payment of money gives that order such effect that it must be considered as being prohibited against the State, this court cannot allow such an order to stand, even though it may be pendant to an order that affords relief that is not considered as against the State. It has been argued that it would be sound public policy to allow for the recovery of attorney fees by a plaintiff whose efforts have resulted in a public benefit in such a case. We cannot make that public-policy choice, however. The choice of policy in this regard already has been made by the people of Alabama as a part of the organic law of this State. Any change in that policy could only come by means of a change in that organic law.
Section 14 of the Alabama Constitution prohibited the court from awarding attorney fees against ADEM in this case. The trial court's judgment awarding attorney fees against ADEM is hereby reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, P.J., concurs specially, with opinion.
THOMPSON and PITTMAN, JJ., concur in the result, without opinion.
BRYAN, J., recuses himself.
CRAWLEY, Presiding Judge, concurring specially.
Article I, § 14 of the Alabama Constitution of 1901, in its entirety, states: "That the State of Alabama shall never be made a defendant in any court of law or equity."
Despite that unambiguous declaration, our Supreme Court has consistently recognized the exceptions noticed in the main opinion. If those exceptions are to stand, then the award of an attorney fee in this case is appropriate, even compelling; but compelling reasons do not justify courts in massaging the words of our constitution.
The compelling reason for an award of an attorney fee in this case can be addressed (incorrectly, in my judgment) by our courts in continuing to apply the exceptions to § 14 recognized by our Supreme Court or (correctly, in my judgment) by our citizens in amending § 14.[12] I cast my vote with our citizens! Article I, § 2 of our constitution states:
 "That all political power is inherent in the people, and all free governments are *Page 1203 
founded on their authority, and instituted for their benefit; and that, therefore, they have at all times an inalienable and indefeasible right to change their form of government in such manner as they may deem expedient."
Alabama Const, of 1901, art. I, § 2 (emphasis added).
An open and robust debate by many citizens in our Legislature over amending § 14 is preferable to a closed debate by only nine citizens on our Supreme Court.
[1] In Alabama Disposal Solutions-Landfill, L.L.C. v. Townof Lowndesboro, 837 So.2d 292 (Ala.Civ.App. 2002), which involved consolidated appeals from the Lowndes Circuit Court and the Montgomery Circuit Court, this court held that the ordinance at issue in that case, which prohibited landfills within Lowndesboro's corporate city limits and with in its police jurisdiction and which is the same ordinance that was at issue in Frazer and Lowndesboro's administrative appeal, was invalid to the extent that it purported to regulate a solid-waste landfill outside Lowndesboro's corporate city limits.Id. at 303.
[2] The purpose of the motion was not to force ADEM to adopt a State Plan as a final regulation; rather, the motion sought to utilize the fact that a State Plan had not been adopted as a basis for having the permit for the landfill at issue voided and for thereby preventing or delaying the construction and operation of that landfill.
[3] The lifting of the stay did not affect our jurisdiction over a consolidated appeal by Lowndesboro and Frazer from a judgment entered by the Lowndes Circuit Court. See note 1, supra.
[4] The first case reported following the adoption of the 1901 Constitution in which the Supreme Court referenced the defense of state immunity afforded by § 14 as being of a "jurisdictional" nature was Alabama Girls' Industrial Schoolv. Adler, 144 Ala. 555, 42 So. 116 (1905). InAdler, the Court noted that "[i]f the defendant had been a person, or a corporation liable to suit, by the course adopted by it [in the trial court] unquestionably the question of the jurisdiction of the court of the person of the defendant would have been waived." 144 Ala. at 556,42 So. at 117 (emphasis added). It then went on to explain that § 14 simply prevented the attorney for the State from waiving this defense on behalf of his client. Adler,144 Ala. at 558, 42 So. at 118. As noted in the text, more recent decisions have treated the defense of state immunity as presenting a question of subject-matter jurisdiction.
[5] Our Supreme Court has recognized several exceptions to § 14 immunity. Exceptions recognized in such cases asPatterson and, even more recently, Jones, include:
 "`"(1) Actions brought to compel State officials to perform their legal duties. Department of Industrial Relations v. West Boylston Manufacturing Co., 253 Ala. 67, 42 So.2d 787 [(1949)]; Metcalf v. Department of Industrial Relations, 245 Ala. 299, 16 So.2d 787 [ (1944) ]. (2) Actions brought to enjoin State officials from enforcing an unconstitutional law. Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13 [ (1945) ]. . . . (3) Actions to compel State officials to perform ministerial acts. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479
[(1943)], and cases there cited. (4) Actions brought under the Declaratory Judgments Act, [Ala. Code 1975, § 6-6-220 et seq.], seeking construction of a statute and how it should be applied in a given situation."'"
Alabama Agric. Mech. Univ. v. Jones,895 So.2d at 873 (quoting Patterson, 835 So.2d at 142, quoting in turn, Aland v. Graham, 287 Ala. 226, 229-30,250 So.2d 677, 679 (1971)). In Ex parte Carter, 395 So.2d 65
(Ala. 1980), our Supreme Court stated:
 "Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. Wallace v. Board of Education of Montgomery County, . . . 280 Ala. [635,] 639, 197 So.2d 428[, 431-32 (1967)]; Unzicker v. State, 346 So.2d 931, 933 (Ala. 1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962)."
Ex parte Carter, 395 So.2d at 68; see also Gore v.Alabama Dep't of Pub. Safety, 883 So.2d 1225 (Ala. 2003);State Highway Dep't v. Milton Constr. Co.,586 So.2d 872 (Ala. 1991); State Bd. of Health v. Atnip Design Supply Ctr., 385 So.2d 1307 (Ala. 1980); and State Dep'tof Human Res. v. Kelly, 623 So.2d 738
(Ala.Civ.App. 1993).
[6] In appropriate circumstances, § 14 does not bar a proceeding against the State for the recovery of moneys that do not belong to the State or that have not been properly acquired by the State. For example, in Department of IndustrialRelations v. West Boylston Manufacturing Co., 253 Ala. 67,42 So.2d 787 (1949), our Supreme Court stated, in the context of an employer's claim for a refund of certain contributions to the unemployment-compensation fund under Ala. Code 1940, tit. 26, § 243:
 "[T]here is no refund of money out of the State Treasury. The money subject to refund payments is collected and administered for certain purposes as directed by law, and that is one of them. . . .
 "Moreover, when it is thus by law collected and put into the custody of some person who is charged by law with the duty of administering it according to standards set up, it is the legal duty of such person thus to apply the money. . . . [H]is duty to administer it according to law may be enforced by mandamus or by some statutory procedure if one is enacted. In such a proceeding the State is not made a party in violation of section 14 of the Constitution. . . .
 "Section 243 . . . does not contemplate any payment out of the State Treasury. It is not necessary to impound an amount and hold it in abeyance as in some instances to meet the requirements of section 14, supra. . . . It authorizes no personal judgment for the amount of the refund, . . . nor directs payment out of the general treasury upon the basis of the result."
Department of Indus. Relations, 253 Ala. at 73,42 So.2d at 791; see, e.g., Glass v. Prudential Ins. Co. ofAmerica, 246 Ala. 579, 586, 22 So.2d 13, 19 (1945), (superceded by statute on other grounds, as recognized byMooney v. Weaver, 262 Ala. 392, 79 So.2d 3 (1955)) (holding that a statute "contemplat[ing] that taxes paid under protest shall be held in trust pending the determination of their legality" did not violate § 14); accord Ex parteMcCurley, 412 So.2d 1236 (Ala. 1982) (sovereign immunity did not bar a judgment requiring the State to return fines and costs that it had imposed on a criminal defendant after her conviction was reversed on appeal); and Horn v. Dunn Bros.,262 Ala. 404, 410, 79 So.2d 11, 17 (1955) ("No judgment against the State was sought or granted. True, the decree may ultimately touch the State treasury. Yet, the State treasury suffers no more that it would, had the Commissioner initially performed his clear bounden duty.").
The award of attorney fees in this case, which would be paid from the State treasury and not from funds that were improperly collected, is clearly distinguishable from the line of authority described in the preceding paragraph; the award of attorney fees against ADEM results in the type of direct affect on thefinancial status of the state treasury that is prohibited by § 14. See State Docks Comm'n v. Barnes,225 Ala. at 405, 143 So. at 582.
[7] The cases that we discuss in this opinion as "BrownI" and "Brown II" actually followed the decision in State v. Brown, 514 So.2d 836 (Ala. 1987), cert.denied, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425
(1988), a case not pertinent to our discussion.
[8] While not necessary to our holding, we find nothing in any of the cases cited in Brown I to suggest that the Supreme Court actually considered the distinction that would exist between the application of § 14 in an action involving the application of a federal statute and an action involving only a claim under state law. None of the cases cited inBrown I in support of the Supreme Court's decision to remand the case for the determination of the proper amount of the attorney fees to be awarded discussed whether the State's immunity under § 14 of the Alabama Constitution shielded it from a claim for attorney fees made in conjunction with a state-law action as opposed to a claim under federal law.Callahan, as noted, was an action under federal civil-rights law and, accordingly, did not discuss the issue of state immunity; Mills v. Electric Auto-Lite Co.,396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), was a shareholder's action under federal securities law, did not involve a state as a party, and did not discuss state immunity; and Sprague v. Ticonic National Bank, 307 U.S. 161,59 S.Ct. 777, 83 L.Ed. 1184 (1939), which was cited in the quotation from Mitts that is contained in BrownI, likewise did not involve the state as a party and did not discuss state immunity.
[9] See note 7, supra.
[10] Many of the above cases involved the City of Birmingham. Section 14 immunity does not extend to municipalities. See,e.g., Norris v. City of Montgomery, 821 So.2d 149, 152-53
(Ala. 2001)
[11] Our conclusion also finds support in federal jurisprudence. Federal courts have held, despite the fact that the common-benefit exception is attributable to the inherent equitable power of the court, see Alyeska Pipeline ServiceCo. v. Wilderness Society, 421 U.S. 240, 259,95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), that it nonetheless took an act of Congress to make the federal government amenable to claims for attorney fees, even in cases in which the government was subject to suit on the underlying claims at issue. See GrandBoulevard Improvement Ass'n v. City of Chicago,553 F.Supp. 1154, 1160 (N.D.Ill.1982) ("One of the principal purposes of the [Equal Access to Justice Act, 28 U.S.C. § 2412(b),] was to permit an award of fees under the common benefit or common fund approach which was not previously available to litigants against the government."); see also Aero Corp. v. Department of theNavy, 558 F.Supp. 404, 418-19 (D.D.C.1983) ("Until recently the United States and its agencies have been shielded by the doctrine of sovereign immunity from liability for attorney's fees, even in circumstances in which private parties would have been held responsible at common law."); Shannonv. United States Dep't of Housing and Urban Dev.,433 F.Supp. 249, 252 (E.D.Pa.1977) ("We recognize that in exceptional private party cases, the courts may exercise their equitable powers to allow costs not covered by [28 U.S.C] § 1920. However, the cases in which this power was invoked did not involve the bar of sovereign immunity."); H. Rep. No. 96-1418reprinted in 1980 U.S. Code Cong. Admin.News 4984, 4987 (stating that the purpose of senate amendments to the proposed [Equal Access to Justice Act] was to make "the United States . . . liable for fees under the `bad faith,' `common fund,' and `common benefit' exceptions to the American Rule" and to require that the "United States . . . be held to the same standards in litigating as private parties"); H. Conf. Rep. 96-1434 reprinted in 1980 U.S. CodeCong. Admin. News 5003, 5014 (stating that, before the 1980 amendments to the Equal Access to Justice Act allowing for attorney-fee awards, "the few non-statutory exceptions to the American Rule available for private litigants [were] . . . not available to private litigants in cases brought by or against the United States").
[12] Hutchinson v. Board of Trustees of Univ. ofAlabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971).