Ray Gore, the plaintiff in an action against the Alabama Department of Public Safety and one of its employees, Sgt. Charles J. Alexander (hereinafter collectively the "Department"), appeals from the judgment of the Baldwin Circuit Court dismissing his claims in part and the subsequent summary judgment in favor of the Department disposing of the remaining claims. We affirm in part; reverse in part; and remand.
On November 2, 2001, Gore was stopped by an Alabama State Trooper for speeding on I-65 near Bay Minette. During that traffic stop, the trooper discovered approximately $115,000 in United States currency in Gore's possession. Suspecting that the currency may have been the product of criminal activity, the trooper confiscated it, along with Gore's cellular telephone and various personal documents.[1] Gore was neither arrested nor taken into custody as a result of the traffic stop. The cash was subsequently transferred to the Federal Drug Enforcement Administration ("DEA"), which instituted forfeiture proceedings.
Gore has not been charged with any crime, offense, or violation, other than a warning citation he received for speeding. He has since sought the return of the currency and personal items from the Department; however, the Department has refused to return them, stating that an investigation is ongoing and that the return of potential evidence could jeopardize that investigation. On March 21, 2002, Gore sued the Department in the Baldwin Circuit Court alleging conversion and seeking a judgment declaring that the seizure of the money and personal items was wrongful.
The Department moved to dismiss the complaint, alleging that Gore failed to state a claim upon which relief could be granted and that the trial court lacked subject-matter jurisdiction over the matter. On May 21, 2002, the trial court granted the motion as to the currency, which was in the possession of the DEA, but denied the motion as to the personal property, over which the Department maintained control. On October 1, 2002, the Department moved for a summary judgment on Gore's remaining claims relating to the cellular telephone and the personal documents. The trial court granted that motion on December 12, 2002. Gore filed a motion to vacate the summary judgment, which the trial court denied, and on January 31, 2003, he timely filed a notice of appeal to this Court.
 I.
Gore raises two arguments on appeal. He first argues that the trial court erred in dismissing his claim against the Department regarding the $115,000 in currency that was seized. Second, he argues that the trial court erred in entering a summary judgment for the Department on his claim regarding the seizure of his cellular telephone and personal documents. Because the trial court considered materials outside the pleadings in ruling on the Department's motion to dismiss, the standard of review for both claims is the same: that *Page 1227 
standard applicable to reviewing a summary judgment. Fraley v.Brown, 460 So.2d 1267, 1268 (Ala. 1984). We have previously explained that standard as follows:
 "The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990)."
Brewer v. Woodall, 608 So.2d 370, 372 (Ala. 1992).
 II.
Gore's first claim is that the trial court erred in dismissing his claims regarding the $115,000 in seized currency, because, he argues, regardless of whether the trial court had in rem jurisdiction over the currency, it had personal jurisdiction over all the parties and subject-matter jurisdiction to decide if the conduct was wrongful. The Department argues that the trial court's judgment was proper (1) because, it argues, the Department is immune from suit under the doctrine of sovereign immunity, and (2) because the $115,000 was in the possession of the DEA and the trial court therefore lacked jurisdiction to address the status of the $115,000.
The Department argues that Gore's action is barred by the principle of sovereign immunity, as expressed in § 14, Ala. Const. 1901, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."[2] As this Court has noted, "[t]he wall of immunity erected by § 14 is nearly impregnable." Patterson v.Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002). However, there is an exception for actions brought to compel State officials to perform ministerial acts. Id. (citing Curry v. Woodstock SlagCorp., 242 Ala. 379, 6 So.2d 479 (1942)). If the Department did not have the authority to retain Gore's property, then the return of that property could be compelled as a ministerial act. SeeLightfoot v. Floyd, 667 So.2d 56, 65 (Ala. 1995). However, this exception to the doctrine of sovereign immunity is of no help to Gore's claim because he is not seeking the return of his currency; instead, he is seeking a judgment declaring that the seizure of the currency was wrongful and he is seeking $115,000 in damages for the conversion. The doctrine of sovereign immunity acts as a jurisdictional bar to such actions, and the trial court, therefore, properly dismissed Gore's claim.
Gore's second argument is that the trial court erred in entering a summary judgment for the Department on his claim regarding the seizure and retention of his cellular telephone and personal documents. The Department again asserts the defense of sovereign immunity. However, that doctrine is inapplicable to this claim because Gore is seeking the physical return of the seized items, not damages for their conversion.[3] As was discussed above, *Page 1228 
there is an exception to sovereign immunity for actions brought to compel State officials to perform ministerial acts, and if the Department does not have the authority to retain Gore's property, then the return of the property can be compelled as a ministerial act. Gore's claim regarding the cellular telephone and the personal documents, therefore, falls within this exception, and we must accordingly decide the issue on its merits.
The Department alleges that under the authority of Warden,Maryland Penitentiary v. Hayden, 387 U.S. 294, 306,87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the government has the right to seize and hold evidence for the purposes of proving a crime. It further maintains that an investigation into the cellular telephone and personal documents is ongoing and that, "Mr. Gore is not entitled to their return until a final decision has been made by the appropriate authorities as to the criminal prosecution of Mr. Gore." Gore distinguishes his case fromHayden, arguing that the property seized in his case was not seized in conjunction with an arrest or a search warrant, and that 16 months after the property was seized (now over 24 months) charges have yet to be filed against him.
Interestingly, neither party has cited Lightfoot, which is this Court's most recent opinion addressing the extent of the State's power to retain seized evidence. In Lightfoot, the campus police at Alabama A M received an anonymous tip that a drug transaction involving a gray automobile and a maroon automobile was taking place behind a dormitory on campus. When the police arrived, they found Reginald Lightfoot and another person sitting in a maroon Ford Mustang automobile. Upon searching them, the police discovered $2,158 in cash on Lightfoot, but no contraband on either party. Neither Lightfoot nor the other person was arrested, but the police seized both the cash and the Ford Mustang.
Lightfoot was never charged with any crime; nonetheless, the money was held for approximately 24 months and the car was held for approximately 15-18 months. As in the case before us, the police in Lightfoot alleged that the money and car were held for so long because they were part of an ongoing criminal investigation. This Court stated:
 "Regarding the investigation rationale, we are aware of no basis of authority, and none has been argued, that could justify retaining custody of the money for nearly two years because of an investigation of the money, of Mr. Lightfoot, or of his acquaintances. The investigation rationale might support the initial retention of the car because of Mr. Lightfoot's inconsistent statements regarding the ownership of the car. That issue, however, was capable of resolution and, indeed, was resolved months before [the police investigator's] release of the car to the F.B.I. At one point in his testimony, [the police investigator] refers to an `investigative hold' on the money and the car. We have not been cited any authority supporting such a police procedure under the circumstances of this case. If the procedure does exist, the hold certainly would have to be temporary and based upon objectively identifiable criteria. Thus, an investigation *Page 1229 
of the property or of its owner does not, on the facts of this case, establish any basis of authority to retain custody of the money or the car for the length of time that the items were held."
Lightfoot, 667 So.2d at 65 (footnote omitted).
In the present case, Gore's cellular telephone and personal documents have been held by the Department for even longer than the Alabama A M police held Lightfoot's money and car. AsLightfoot makes clear, the retention of a citizen's property for that length of time may not be justified solely by the law-enforcement agency's assurance that an investigation is ongoing.[4] Gore has, therefore, established a genuine issue of material fact as to whether the Department has wrongfully withheld his cellular telephone and personal documents. For that reason, the summary judgment entered in favor of the Department regarding the cellular telephone and personal documents is reversed.
 III.
Because the trial court's decision to dismiss Gore's claims regarding the $115,000 was proper, we affirm that order; however, because there is a genuine issue of material fact as to whether the Department is entitled to continue to hold Gore's cellular telephone and his personal documents, we reverse the summary judgment on the claims relating to the documents and the telephone and remand the case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs in the result in part and dissents in part.
[1] Gore asserts that the seizure was effectuated by Sgt. Charles Alexander; however, the Department claims that the items were actually taken by Trooper Chad Chandler and that Sgt. Alexander is merely the case agent assigned to investigate the incident.
[2] Sgt. Alexander has been sued in his official capacity only. Therefore, he is entitled to the same sovereign immunity (and subject to the same exceptions) as the Department of Public Safety.
[3] Similarly, the doctrine of sovereign immunity might not apply to the $115,000 Gore seeks to recover if he were attempting to replevy the seized cash instead of seeking damages for conversion. However, such an action would also have been due to be dismissed because 21 U.S.C. § 881(c) and 28 U.S.C. § 1355(a) give the federal district courts original jurisdiction in all federal forfeiture actions. See Edney v. City of Montgomery,960 F.Supp. 270 (M.D.Ala. 1997) (holding that the United States' adoption of a state's seizure of currency has the same effect as if the United States had originally seized the currency).
[4] In Lightfoot, the police also claimed that they had retained the items for forfeiture pursuant to § 20-2-93, Ala. Code 1975. While the Department has not made that argument in this case, this Court in Lightfoot noted that where items had been seized "without process," forfeiture proceedings instituted more than approximately a month after seizure were not "instituted promptly" and were therefore ineffectual. Lightfoot, 667 So.2d at 66.