BRYAN, Judge.
The defendant, Our Southern Home Management, Inc. (“Our Southern Home”), appeals a summary judgment in favor of the plaintiff, Ponquinette, Inc., d/b/a Lincoln Pharmacy (“Lincoln”). We reverse and remand.
On November 7, 2002, Our Southern Home, an assisted-living facility, and Lincoln, a pharmacy, executed a written contract in which Lincoln agreed to provide medicine to Our Southern Home for it to dispense to its residents. In pertinent part, the contract stated:
“TERM
“This agreement shall be ongoing from the date on which this Agreement is entered and continuing for a period of three (3) years. The Agreement automatically renews for a like term on the anniversary date unless terminated by either party for just cause with a 30 day written notice. Such cause must be communicated to the party in writing and a 30-day opportunity given for the issue to be resolved. Upon the effective date of such termination each party shall be relieved and discharged.
“In that specific equipment has been designated for use by [Our Southern Home,] should [Our Southern Home] for any reason terminate, or cause this agreement to terminate, or be in default for any reason, prior to the expiration of the initial term, [Our Southern Home] agrees to reimburse [Lincoln] for expenses incurred in the purchase of equipment in an amount that is equal to one-thirty-six (1/36) of the total cost of equipment for each month from the termination to the expiration of the term.”
(Emphasis added.)
Thus, the initial three-year term of the contract would have expired on November 6, 2005. However, Our Southern Home terminated the contract on May 23, 2003, approximately 29 months before November 6, 2005. On August 21, 2003, Lincoln sued Our Southern Home and its president, Lynn Weiss, alleging a breach-of-contract claim against Our Southern Home only and a conversion claim against both Our Southern Home and Weiss.
In its breach-of-contract claim, which is the only claim material to this appeal, Lincoln alleged that Our Southern Home had breached the contract by refusing to reimburse Lincoln for expenses Lincoln had incurred in purchasing equipment that was *156 designated for use by Our Southern Home. As damages, Lincoln sought to recover an amount equal to 1/36 of the total cost of the equipment for each of the approximately 29 months between May 23, 2003, and November 6, 2005.
After Our Southern Home and Weiss answered Lincoln’s complaint, Lincoln moved the trial court for a partial summary judgment with respect to its breach-of-contract claim against Our Southern Home. As evidence in support of its partial-summary-judgment motion, Lincoln submitted the contract executed by the parties on November 7, 2002,[1] and an affidavit in which its president, Donald Pon-quinette, testified, in pertinent part:
“[Our Southern Home] terminated the agreement as of 23 May 2003, which was 29 months from the expiration of the initial term. The total cost of the equipment designated for use by [Our Southern Home] was $32,885.85. l/36th of $32,885.85 is $913.49. The product of $913.49 times 29 is $26,491.21. I ask for judgment on behalf of [Lincoln] in the amount of $26,491.21.”
Our Southern Home filed a response to Lincoln’s partial-summary-judgment motion in which it objected to Ponquinette’s testimony regarding Lincoln’s damages on the ground that Ponquinette neither identified the individual items of equipment for which Lincoln was seeking recovery nor specified the itemized cost of that equipment. Subsequently, after taking Ponqui-nette’s deposition, Our Southern Home amended its response to Lincoln’s partial-summary-judgment motion and submitted excerpts from Ponquinette’s deposition in opposition to Lincoln’s partial-summary-judgment motion. Our Southern Home’s amended response directed the trial court to testimony in Ponquinette’s deposition in which he testified (1) that $6,441.09 of the $32,885.85 that Lincoln claimed it had expended for equipment designated for use by Our Southern Home pursuant to the November 7, 2002, contract had been expended by Lincoln to purchase equipment to be used in performing a September 2001 oral contract with an entity other than Our Southern Home; and (2) that $22,141.50 of that $32,885.85 was an amount Lincoln owed for leasing equipment rather than 'purchasing it. Our Southern Home further directed the trial court to the language of the November 7, 2002, contract executed by Lincoln and Our Southern Home stating that Our Southern Home’s agreement to reimburse Lincoln related only to equipment purchased by Lincoln and did not relate to equipment leased by Lincoln.
Lincoln then submitted an authenticated copy of the lease agreement pursuant to which it owed $22,141.50 for equipment it had leased. The trial court, on October 5, 2005, entered an order (“the October 5 order”) granting Lincoln’s partial-summary-judgment motion and entering a judgment against Our Southern Home with respect to Lincoln’s breach-of-contract claim in the amount of $26,491.21. The October 5 order did not certify the judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.
On November 3, 2005, Our Southern Home moved the trial court “to reconsider” the October 5 order. As the grounds of that motion, Our Southern Home reiterated its arguments challenging the damages claimed by Lincoln and, in addition, asserted for the first time that Lincoln had failed to mitigate its damages. On No *157 vember 4, 2005, Lincoln moved the trial court to dismiss, without prejudice, its conversion claim against Our Southern Home and Weiss in order to make the partial summary judgment with respect to its breach-of-contract claim a final judgment. On November 22, 2005, the trial court granted Lincoln’s motion to dismiss, without prejudice, its conversion claim and denied Our Southern Home’s motion “to reconsider” the October 5 order.
On December 19, 2005, Our Southern Home filed a Rule 59, Ala. ■ R. Civ. P., postjudgment motion in which it (1) reiterated its arguments challenging the damages claimed by Lincoln; (2) again asserted that Lincoln had failed to mitigate its damages; and (3) asserted for the first time that the language in the contract stating that, upon termination of the contract, “each party shall be relieved and discharged” conflicted with the language obligating Our Southern Home to reimburse Lincoln for equipment it had purchased for use by Our Southern Home if the contract were terminated before the expiration of its initial three-year term and, therefore, created an ambiguity regarding whether Our Southern Home was obligated to reimburse Lincoln for such equipment. On February 17, 2006, the trial court denied Our Southern Home’s postjudgment motion. On March 29, 2006, Our Southern Home appealed to this court.
As a threshold matter, Lincoln asserts that this court does not have jurisdiction over Our Southern Home’s appeal because, Lincoln says, Our Southern Home did not timely file its notice of appeal. Specifically, Lincoln asserts that Our Southern Home’s Rule 59 postjudgment motion was nothing more than an attempt to obtain reconsideration of the trial court’s denial of Our Southern Home’s earlier motion “to reconsider” the October'5 order and that, “[i]n the usual case, after a post-judgment motion has been denied, the only review of that denial is by appeal; a judge has no jurisdiction to ‘reconsider’ the denial.” Ex parte Dowling, 477 So.2d 400, 404 (Ala.1985) (emphasis added)'. On the basis of that premise, Lincoln then argues (1) that the 42-day period for Our Southern Home to file a notice of appeal began running on November 22, 2005, when the dismissal of the conversion claim made the partial summary judgment with respect to the breach-of-contract claim a final' judgment; (2) that Our Southern Home’s Rule 59 postjudgment motion did not suspend the running of the 42-day period because its Rule 59 motion was a nullity; and (3) that, therefore, the 42-day period expired on January 3, 2006, 85 days before Our Southern Home filed its notice of appeal.
Lincoln’s argument fails, however, because it erroneously presupposes that Our Southern Home’s motion to reconsider the October 5 order was a postjudgment motion — it was not a postjudgment motion because it was filed before the October 5 order became a final, appealable judgment on November 22, 2005, when the trial court dismissed the conversion claim. Cf. Rule 54(a), Ala. R. Civ. P. (“ ‘Judgment’ as used in these rules includes a decree and any order from which an appeal lies.” (emphasis added)). Because Our Southern Home’s motion “to reconsider” the October 5 order was not a “postjudgment” motion, its adjudication did not deprive the trial court of jurisdiction to adjudicate Our Southern Home’s Rule 59 postjudgment motion. Cf. Ex parte Doivling, 477 So.2d at 404 (“In the usual case, after a post-judgment motion has been denied, the only review of that denial is by appeal; a judge has no jurisdiction to ‘reconsider’ the denial.” (emphasis added)). Therefore, the filing of Our Southern Home’s Rule 59 post- *158 judgment motion suspended the running of the 42-day period for Our Southern Home to file a notice of appeal until the trial court denied that motion on February 17, 2006. See Rule 4(a)(3), Ala. R.App. P. Our Southern Home had 42 days after February 17 to file its notice of appeal; it timely filed its appeal on March 29, 2006, the 40th day after February 17. Thus, this court has jurisdiction over Our Southern Home’s appeal.
On appeal, Our Southern Home argues, among other things, that the trial court erred in granting Lincoln’s partial-summary-judgment motion because, Our Southern Home says, the deposition testimony of Ponquinette established a genuine issue of material fact regarding the amount of damages Lincoln was entitled to recover.
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmov-ant and resolve all reasonable doubts against the movant.’ ”
Gore v. Alabama Dep’t of Pub. Safety, 883 So.2d 1225, 1227 (Ala.2003) (quoting Brewer v. Woodall, 608 So.2d 370, 372 (Ala.1992)).
Ponquinette’s testimony tended to prove (1) that $6,441.09 of the $32,885.85 that Lincoln claimed it had expended for equipment designated for use by Our Southern Home pursuant to the November 7, 2002, contract had been expended by Lincoln to purchase equipment to be used in performing a September 2001 oral contract with an entity other than Our Southern Home; and (2) that $22,141.50 of that $32,885.85 was an amount Lincoln owed for leasing equipment rather than purchasing it. Thus, Ponquinette’s testimony established the existence of a genuine issue of material fact regarding the amount of damages Lincoln was entitled to recover. Accordingly, we reverse the trial court’s judgment and remand the case to the trial court.[2]
REVERSED AND REMANDED.
CRAWLEY, P.J., concurs.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur in the result, without writing.

. Initially, Lincoln mistakenly submitted a contract between it and an entity other than Our Southern Home, but, after Our Southern Home pointed out this error, Lincoln submitted its November 7, 2002, contract with Our Southern Home.

. We do not consider the other arguments Our Southern Home has raised on appeal because the record does not establish that Our Southern Home presented those arguments to the trial court before or at the time of submission of Lincoln’s partial-summary-judgment motion. See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) C‘[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.”).